Argued and submitted January 10, decision of the Court of Appeals affirmed in part
and reversed in part; judgment of the circuit court affirmed November 24, 1995

Mary A. GREIST,
Personal Representative of the Estate of
Peter Maurice Greist, Deceased,
*Respondent on Review,*

*v.*

Nicky Don PHILLIPS
and Lightning Transportation, Inc.,
a Tennessee corporation,
*Petitioners on Review.*

Nicky Don PHILLIPS
and Lightning Transportation, Inc.,
a Tennessee corporation,
*Petitioners on Review,*

*v.*

Elizabeth B. TRIPP
and Mary A. Greist, individually,
*Respondents on Review.*

(CC 90-1879-L-1; CA A76287; SC S41542)

906 P2d 789

Ridgway K. Foley, Jr., of Foley & Duncan, P.C., Portland, and Hugh B. Collins, Medford, argued the cause for petitioners on review. With them on the briefs was M. Elizabeth Duncan.

Kathryn H. Clarke, Portland, argued the cause for respondent on review Mary A. Greist. With her on the briefs were Maureen Leonard, Portland, and Robert A. Berst, Seattle, Washington.

Daniel L. Harris, of Davis, Gilstrap, Harris, Hearn & Welty, Ashland, appeared on behalf of respondent on review Elizabeth B. Tripp and joined in the brief on the merits of respondent on review Greist.

John T. Kaempf, Douglas G. Houser, and R. Lindahl, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, P.C., Portland, filed a brief on behalf of *amicus curiae* Defense Research Institute.

Keith J. Bauer and Billy M. Sime, of Parks, Bauer, Sime & Winkler, Salem, filed a brief on behalf of *amicus curiae* Oregon Association of Hospitals and Health Systems.

Brent M. Crew and Thomas E. Cooney, of Cooney & Crew, P.C., Portland, filed a brief on behalf of *amicus curiae* Oregon Medical Association.

William L. Hallmark, of Hallmark, Keating & Abbott, P.C., Portland, filed a brief on behalf of *amicus curiae* Senco Products, Inc.

Robert Udziela and Kimberley Chaput, of Pozzi Wilson Atchison, Portland, filed a brief on behalf of *amici curiae* Oregon Trial Lawyers Association, Oregon Consumer League, and ARC of Multnomah County.

GRABER, J.

Fadeley, J., filed a concurring opinion.

Unis, J., filed an opinion concurring in part and specially concurring in part in which Durham, J., joined.

## GRABER, J.

The questions presented on review in this wrongful death case are: (1) whether the trial court erred when it allowed the jury to consider defendant Phillips' violation of certain federal regulations as evidence of negligence; (2) whether the trial court properly interpreted ORS 18.560,[1] which limits to $500,000 the amount that may be recovered as noneconomic damages in this wrongful death action; and (3) whether the trial court properly determined that ORS 18.560, as applied to this statutory wrongful death proceeding, does not violate various provisions of the Oregon and federal constitutions. The Court of Appeals affirmed the trial court with respect to the evidentiary point, but reversed as to the constitutional point on the ground that ORS 18.560 violates Article VII (Amended), section 3, of the Oregon Constitution, not reaching the statutory construction issue. *Greist v. Phillips*, 128 Or App 390, 404, 875 P2d 1199 (1994). In considering the meaning and constitutionality of ORS 18.560, we limit our analysis to the application of ORS 18.560 to a statutory claim for wrongful death and, for the following reasons, affirm the judgment of the trial court in its entirety.

---

[1] ORS 18.560 provides in part:

"(1) Except for claims subject to ORS 30.260 to 30.300 [the Oregon Tort Claims Act] and ORS chapter 656 [the Oregon Workers' Compensation Act], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000.

"(2) As used in this section:

"(a) 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less.

"(b) 'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

## I. FACTS AND PROCEDURAL BACKGROUND

Because this case comes to us after a trial at which the jury found in plaintiff's favor, we view all the evidence, and the inferences that reasonably may be drawn from it, in the light most favorable to plaintiff. *See Wagner v. Kaiser Foundation Hospitals*, 285 Or 81, 83-84, 589 P2d 1106 (1979) (stating principle).

On June 14, 1989, plaintiff, her son and daughter, and Tripp (who was the son's aunt) were returning to Oregon from California on Interstate 5 in a Volkswagen van. At about 4:30 pm, the van was descending from the Siskiyou Pass. The descent from the pass is about a six percent downgrade for seven miles.

At the same time, a five-axle truck and trailer rig was also traveling north on I-5, coming down from the Siskiyou Pass. The truck's brakes were not functioning properly. The driver of the truck, Phillips, was aware that the truck's brakes were not functioning properly. Although the posted maximum safe speed at the outset of the downgrade was 18 miles per hour for a truck that weighed as much as the truck being driven by Phillips, Phillips was traveling at approximately 40 miles per hour when he began his descent from the Siskiyou Pass. The brakes did not operate adequately on the descent. About six miles below the summit, Phillips ran into the rear end of plaintiff's van. The van was propelled forward, and it overturned, skidding to a stop 595 feet from the point of impact. The decedent, who was almost 10 months old, was thrown from the van and was killed. After hitting the van, the truck was unable to stop for almost three miles.

Plaintiff, the personal representative of her son's estate, brought this action for the wrongful death of her son, pursuant to ORS 30.020.[2] She named as defendants Phillips

---

[2] ORS 30.020 provides in part:

"(1) When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of the decedent's surviving spouse, surviving children, surviving parents and other individuals, if any, who under the law of intestate succession of the state of the decedent's domicile would be entitled to inherit the personal property of the decedent * * * may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. * * *

and his employer, Lightning Transportation, Inc. Plaintiff sought compensation for the parents' loss of their child's society and companionship and for pecuniary loss to the decedent's estate. After a trial, the jury returned a verdict for plaintiff, awarding economic damages of $100,000 and noneconomic damages of $1.5 million. The trial court applied ORS 18.560 and entered a judgment for plaintiff that included economic damages of $100,000 and noneconomic damages of $500,000.

Plaintiff appealed, assigning as error the application of ORS 18.560 to reduce the award of noneconomic damages. The Court of Appeals reversed; it held that the statutory limit of $500,000 for noneconomic damages in civil actions violates Article VII (Amended), section 3, of the Oregon Constitution. 128 Or App at 404. Defendants crossappealed, assigning as error (as now pertinent) the trial court's refusal to withdraw from the jury two allegations of negligence that were based on federal regulations concerning the operation of commercial trucks. The Court of Appeals affirmed as to those assignments of error. *Id.* at 398-99.

---

"* * * * *

"(2) In any action under this section damages may be awarded in an amount which:

"(a) Includes reasonable charges necessarily incurred for doctors' services, hospital services, nursing services, other medical services, burial services and memorial services rendered for the decedent;

"(b) Would justly, fairly and reasonably have compensated the decedent for disability, pain, suffering and loss of income during the period between injury to the decedent and the decedent's death;

"(c) Justly, fairly and reasonably compensates for pecuniary loss to the decedent's estate;

"(d) Justly, fairly and reasonably compensates the decedent's spouse, children, stepchildren, stepparents and parents for pecuniary loss and for loss of the society, companionship and services of the decedent[.]"

That part of ORS 30.020 was amended to its present form by Oregon Laws 1991, chapter 471, section 1. Those amendments apply only to claims arising on or after September 29, 1991. Or Laws 1991, ch 471, § 2. Those amendments added stepparents and stepchildren as persons covered by the statute. The 1991 amendments do not affect the issues or wording that we address in this case. Accordingly, we cite to the current version of ORS 30.020, rather than referring to ORS 30.020 (1989).

Plaintiff does not argue that there is a common law action for wrongful death. Her briefing acknowledges that "the right of action for wrongful death is statutory."

## II. THE 70-HOUR AND OPERATIVE-SPEEDOMETER RULES

■ Defendants contend that the trial court erred by refusing to withdraw from the jury two allegations of negligence that were based on Phillips' violation of federal regulations. Federal regulations require every commercial truck to have an operative speedometer at all times. 49 CFR 393.82.[3] Federal regulations also prohibit a truck driver from being on duty for more than 70 hours in any period of eight consecutive days. 49 CFR 395.3.[4]

From the evidence developed at trial, a reasonable juror could have inferred that the speedometer in the truck was not operative at the time of the accident. A reasonable juror also could have inferred that Phillips had driven the truck for more than 70 hours in eight consecutive days at the time of the accident. The Court of Appeals discussed at length the evidence supporting those inferences, 128 Or App 398-99, and the general principles applicable thereto, *id.* at 396-99. It would not benefit bench or bar to repeat that discussion here. For the purpose of this case, it is enough to observe that, viewing the evidence and all inferences that reasonably may be drawn therefrom in the light most favorable to plaintiff, a reasonable juror could have found that Phillips' failure to meet those federal standards was a substantial contributing factor to the accident and the resultant injury to the decedent.

The trial court did not err when it allowed the jury to consider the allegations of negligence based on 70-hour and operative-speedometer rules. The Court of Appeals correctly affirmed the rulings of the trial court on those points.

---

[3] 49 CFR 393.82 provides in part:

"Every bus, truck, and truck-tractor shall be equipped with a speedometer indicating vehicle speed in miles per hour, which shall be operative with reasonable accuracy[.]"

[4] 49 CFR 395.3 (1989), the version of 49 CFR 385.3 in effect on the date of the accident, provided in part:

"(b) No motor carrier shall permit or require a driver of a commercial motor vehicle, regardless of the number of motor carriers using the driver's services, to drive for any period after —

"* * * * *

"(2) Having been on duty 70 hours in any period of 8 consecutive days if the employing motor carrier operates motor vehicles every day of the week."

## III. ORS 18.560: STATUTORY ARGUMENT

The jury awarded plaintiff $1.5 million in non-economic damages. The trial court applied ORS 18.560 and entered judgment for noneconomic damages of $500,000. Plaintiff mounts a variety of challenges to the application of ORS 18.560 in this case.

 This court considers subconstitutional claims before considering constitutional ones. *See Zockert v. Fanning*, 310 Or 514, 520, 800 P2d 773 (1990) (describing method of analysis). Plaintiff first argues that the trial court erred in holding that the claims of all individuals in an action to which ORS 18.560 applies are subject to a single-dollar limitation. Under plaintiff's statutory argument, the court should have entered judgment for noneconomic damages of $500,000 to *each* surviving parent, for a total award of $1 million in noneconomic damages. Defendants argue that the trial court correctly held that ORS 18.560 imposes a single limit on the noneconomic damage award in a wrongful death action relating to one decedent, regardless of the number of beneficiaries that there happen to be.

 In construing statutes, our task is to discern the intent of the legislature. In doing so, the first level of analysis is to examine the text and context of the statute. If the legislature's intent is clear from those inquiries, further inquiry is unnecessary. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993).

ORS 18.560(1), quoted above at note 1, provides that, with certain exceptions not applicable here, "in any civil action seeking damages arising out of * * * death * * * of any one person * * * the amount awarded for noneconomic damages shall not exceed $500,000." That wording limits the "amount awarded for noneconomic damages" in any "civil action" arising out of the death "of any one person" to $500,000.

For the purpose of this case, we need to decide only how ORS 18.560(1) applies to a wrongful death claim. In that context, the application of ORS 18.560(1) is clear. This "civil action" seeks damages arising out of the death of "one person." ORS 18.560(1).

ORS 30.020(1), quoted above at note 2, provides, as relevant here, that the personal representative of a decedent may "maintain an action against the wrongdoer." That is, the personal representative may bring only one action when there is only one decedent, no matter how many beneficiaries there may be. Here, there was but one decedent, and plaintiff brought one action. Under ORS 18.560(1), that action is subject to a single limit of $500,000.

The trial court did not err in interpreting the statute when it applied a single $500,000 limit on noneconomic damages delineated in ORS 18.560(1) to this wrongful death action.[5]

## IV. ORS 18.560(1): CONSTITUTIONAL ARGUMENTS

Plaintiff argues that the trial court's application of ORS 18.560(1) to limit the jury award of noneconomic damages to $500,000 violates both the state and federal constitutions. In particular, plaintiff asserts that application of the statutory limit violates Article I, sections 10, 17, and 20, and Article VII (Amended), section 3, of the Oregon Constitution,[6] and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.[7] Defendants respond that ORS 18.560(1) violates neither the state nor the federal constitution.

---

[5] The Court of Appeals did not rule on that holding.

[6] Article I, section 10, of the Oregon Constitution, provides in part: "[E]very man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Article I, section 17, of the Oregon Constitution, provides: "In all civil cases the right of Trial by Jury shall remain inviolate."

Article I, section 20, of the Oregon Constitution, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article VII (Amended), section 3, of the Oregon Constitution, provides in part:

"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

[7] The Fourteenth Amendment to the United States Constitution provides in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

■ This court considers state constitutional claims before considering federal constitutional claims. *Sterling v. Cupp*, 290 Or 611, 614, 625 P2d 123 (1981). Accordingly, we next decide whether the application of ORS 18.560(1) in this case violates the cited provisions of the Oregon Constitution.

## A. *Article I, section 10, of the Oregon Constitution*

■ Article I, section 10, of the Oregon Constitution, provides in part that "every man shall have remedy by due course of law for injury done him." Plaintiff argues that she has suffered injuries in this case, which ORS 30.020 establishes as legally cognizable. She reasons that application of ORS 18.560(1) to her claim violates Article I, section 10, because that statute "wholly denies a remedy for legitimate losses which exceed $500,000, and it fails to offer alternative remedies." Decisions from this court discussing Article I, section 10, dispose of plaintiff's argument.

■ In *Hale v. Port of Portland*, 308 Or 508, 517-24, 783 P2d 506 (1989), this court addressed whether certain limits on damages contained in the Oregon Tort Claims Act, ORS 30.260 to 30.300, violated Article I, section 10. The court held that they did not. 308 Or at 523-24. In reaching that conclusion, the court discussed the development of Article I, section 10, jurisprudence in this court, *id.* at 519-23, summarizing prior cases as follows:

> "[Prior cases from this court] held only that Article I, section 10, is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy. Under those cases, the remedy need not be precisely of the same type or extent; it is enough that the remedy is a substantial one." *Id.* at 523 (citations omitted).

*See also Neher v. Chartier*, 319 Or 417, 424, 879 P2d 156 (1994) (quoting that passage with approval). Accordingly, the legislature is entitled to amend the amount of damages available in a statutory wrongful death action without running afoul of Article I, section 10, as long as the plaintiff is not left without a substantial remedy.

Plaintiff brought this action under ORS 30.020. That statute entitles plaintiff to damages in an amount that "includes reasonable" medical, burial, and memorial services

rendered for the decedent, ORS 30.020(2)(a), and "would justly, fairly and reasonably" compensate plaintiff for pecuniary loss to the decedent's estate and loss of the society, companionship, and services of the decedent, ORS 30.020-(2)(c) & (d). The jury awarded $100,000 in "economic damages," which are "objectively verifiable monetary losses," including expenses for medical, burial, and memorial services and loss to an estate (including loss of services to an estate). ORS 18.560(2)(a). The jury also awarded $1.5 million in "noneconomic damages," which are "subjective, nonmonetary losses," including loss of society and companionship. ORS 18.560(2)(b). Applying ORS 18.560(1), the trial court gave plaintiff judgment for noneconomic damages of $500,000, in addition to the $100,000 in economic damages, for a total of $600,000.

Plaintiff has not been left without a remedy. She has received $600,000, comprised of $500,000 in noneconomic damages and $100,000 in economic damages. There was no statutory limit on the latter category of damages. Although that remedy is not precisely of the same extent as that to which plaintiff was entitled before the enactment of ORS 18.560(1), that remedy is substantial. *See Hale*, 308 Or at 517-24 (upholding, under Article I, section 10, a $100,000 limitation on liability of each public body under the Oregon Tort Claims Act, despite the plaintiff's economic damages of more than $600,000).

The remedy for wrongful death is substantial, not only because 100 percent of economic damages plus up to $500,000 in noneconomic damages is a substantial amount, but also because the statutory wrongful death action in Oregon has had a low limit on recovery for 113 years of its 133-year history. *See* 322 Or at 294, below (discussing history of wrongful death action in Oregon). As noted there, the wrongful death claim came into existence with a limitation, and the highest previous limitation (1961-67) was $25,000. In relation to that history, the present remedy is substantial.

Plaintiff's Article I, section 10, argument is not well taken.

B. *Article I, section 20, of the Oregon Constitution*

■ Plaintiff also argues that the limitation on non-economic damages in ORS 18.560(1), as applied to this wrongful death claim, violates Article I, section 20, of the Oregon Constitution. Plaintiff reasons that, "in some cases [application of that statute will] prohibit the judge from entering the award the jury deemed *appropriate in that particular case.*" (Emphasis in original.) In other words, persons awarded more than $500,000 in noneconomic damages are subject to the statutory limit in ORS 18.560(1), while persons who are awarded noneconomic damages of $500,000 or less receive full compensation for their injuries. Thus, plaintiff argues, ORS 18.560(1) discriminates against the class of persons who, in the absence of the statute, would receive noneconomic damages in excess of $500,000.

In *Sealey v. Hicks*, 309 Or 387, 397, 788 P2d 435, *cert den* 498 US 819 (1990), this court said:

> "In evaluating whether a class exists under Article I, section 20, we must first determine whether the class is created by the challenged law itself or by virtue of characteristics * * * apart from the law in question. Classes of the first type are entitled to no special protection and, in fact, are not even considered to be classes for the purposes of Article I, section 20." (Internal quotation marks omitted; citations omitted; ellipses in original.)

The classes to which plaintiff's argument refers clearly are classes "created by the challenged law itself." ORS 18.560(1) divides plaintiffs into "classes" based on the amount that happens to be awarded after trial. "[S]uch a decision is within the purview of the legislature." *Sealey*, 309 Or at 397. Plaintiff's Article I, section 20, argument is not well taken.

C. *Jury Trial Rights: Article I, section 17, and Article VII (Amended), section 3, of the Oregon Constitution*

Next, plaintiff argues that the application of ORS 18.560(1) to this wrongful death action violates her right to a jury trial as provided in Article I, section 17, and Article VII (Amended), section 3, of the Oregon Constitution. Plaintiff argues that the right to a jury trial means that the jury decides the facts (including the amount of damages to be awarded) *and* that the jury's unmodified determination of

damages is given effect: "Reducing a verdict after a jury has determined that the evidence supports an award in a specified amount is an invasion of the jury's sole responsibility and is prohibited by [Article I, section 17, of] the constitution." Moreover, according to plaintiff, Article VII (Amended), section 3, "makes it explicit that overriding the jury's damage award if it is supported by the evidence is also impermissible."

Article I, section 17, guarantees a jury trial in civil actions. Article I, section 17, was part of the Bill of Rights of the Oregon Constitution, which was adopted in 1857. Article VII (Amended), section 3, guarantees that, after a jury trial, "no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Article VII (Amended), section 3, of the Oregon Constitution, was adopted by the voters of Oregon by initiative petition in 1910.

## 1. *Article I, section 17, of the Oregon Constitution*

The right to trial by jury in Article I, section 17,

"does not give plaintiff a right to a jury trial in *all* civil matters. * * * [A] jury trial is guaranteed only in those classes of cases in which the right was customary at the time the constitution was adopted or in cases of like nature. We must, therefore, decide whether plaintiff had a well-established right to have a jury determine the amount of damages in an action [for wrongful death] when our constitution was adopted." *Molodyh v. Truck Insurance Exchange*, 304 Or 290, 295-96, 744 P2d 992 (1987) (emphasis in original; citations omitted; footnote omitted).[8]

*See also Deane v. Willamette Bridge Co.*, 22 Or 167, 169-77, 29 P 440 (1892) (the plaintiff had no right under Article I, section 17, to a jury determination of damages in a default

---

[8] In *Molodyh*, the issue was whether ORS 743.648 violated Article I, section 17, of the Oregon Constitution, by depriving an insured of the right to a jury trial. That statute sets forth an appraisal procedure in the event of a dispute, under a fire insurance policy, over the actual cash value or the amount of the loss. 304 Or at 292. This court held that, in order to be constitutional, the statute would have to be construed as nonbinding with respect to the party not demanding the arbitration. *Id.* at 299. An action on an insurance policy is an action on a contract, as to which there was a right to a jury trial when our constitution was adopted. *Id.* at 295-98. The plaintiff, who had asserted his right to a jury trial throughout the litigation, was entitled to a jury trial. *Id.* at 300.

proceeding, because common law did not afford a right to jury trial in a default proceeding).

In Oregon, as plaintiff acknowledges, the right of action for wrongful death is statutory. "[A]t common law no remedy by way of a civil action for wrongful death existed." *Richard v. Slate*, 239 Or 164, 167, 396 P2d 900 (1964). In *Goheen v. General Motors Corp.*, 263 Or 145, 153-54, 502 P2d 223 (1972), this court traced the history and development of wrongful death actions in Oregon and stated:

> "The original Oregon Wrongful Death Act was included in the original Deady Code in 1862. * * * [It] did not specifically limit awards of damages to any named dependents. Neither did it specifically limit damages to pecuniary loss, although total recovery was limited to $5,000. This limitation on the amount of recovery was increased from time to time, and was finally removed [by Oregon Laws 1967, chapter 554, section 1]." (Footnotes omitted.)

There was no wrongful death statute in Oregon before the 1862 Deady Code. *Ibid.* Therefore, at the time Article I, section 17, was adopted, no right existed for a trial by jury for a wrongful death action. Because wrongful death actions are "purely statutory," they "exist only in the form and with the limitations chosen by the legislature." *Hughes v. White*, 289 Or 13, 18, 609 P2d 365 (1980).

Plaintiff argues, however, that the right to a jury trial is "not strictly limited to cases in which it existed in 1859, when [Article I, section 17,] became effective," because the right extends to "cases 'of like nature' " to those that existed at common law at the time the constitution was adopted. Plaintiff argues that, in 1857, a right to jury trial existed for personal injury actions; that a wrongful death action is "of like nature" to a personal injury action; and, thus, that the right to a jury trial attaches here. Even accepting the premise that a wrongful death action is "of like nature" to a personal injury action, plaintiff's argument would not prevail. When Article I, section 17, and the constitution were adopted, a jury's determination of the amount of damages to be awarded in tort actions was not protected from judicial alteration.

Before the adoption of Article VII (Amended), section 3, in 1910, Oregon trial courts were empowered to

exercise their discretion and set aside jury verdicts and grant new trials for excessive damages found by a jury, or to order a remittitur of the excess as a condition to denying a motion for a new trial. *See, e.g.*, General Laws of Oregon, ch 2, § 232(5), p 197 (Deady 1845-1864) (court could set aside jury's verdict because of "[e]xcessive damages * * * given under the influence of passion or prejudice"); *Adcock v. Oregon Railroad Co.*, 45 Or 173, 181, 77 P 78 (1904) ("Where the damages assessed are excessive, in the opinion of the trial court, or not justified by the evidence, the error may in many cases be obviated by remitting the excess."); *Sorenson v. Oregon Power Co.*, 47 Or 24, 33, 82 P 10 (1905) (approving trial court's exercise of remittitur). *See also* Hall S. Lusk, *Forty-Five Years of Article VII, Section 3, Constitution of Oregon*, 35 Or L Rev 1, 4 (1955) (stating that, before adoption of Article VII (Amended), section 3, trial courts were empowered to set aside verdicts that they believed to be excessive).

Article VII (Amended), section 3, and subsequent decisions by this court, did away with that practice. "In order to inhibit such practice and to uphold verdicts, the Constitution was amended so as to preclude a court from re-examining any fact that had been tried by a jury, when the verdict returned was based on any legal evidence." *Buchanan v. Lewis A. Hicks Co.*, 66 Or 503, 510, 133 P 780, 134 P 1191 (1913).

*Until* the adoption of Article VII (Amended), section 3, in 1910, trial courts were empowered to reduce jury awards of damages when the courts believed that those awards were excessive. That fact, in itself, disposes of plaintiff's argument that there existed at common law, at the time Article I, section 17, was adopted in 1857, a right to have a judge enter judgment on a jury's award of damages — without judicial alteration — in a personal injury action.

Plaintiff's Article I, section 17, argument is not well taken.

2. *Article VII (Amended), section 3, of the Oregon Constitution*

As noted above, the right of action for wrongful death in Oregon is wholly statutory, and the legislature is entitled

to impose boundaries on statutory actions. 322 Or at 292. Indeed, for most of its existence, the statutory right of action for wrongful death has contained a limitation on the amount that a plaintiff could recover. In it original form, the Oregon Wrongful Death Act limited a plaintiff's total recovery to $5,000. The legislature increased that limitation on the amount of recovery from time to time; in 1961, the legislature raised the limit for the fifth time, to $25,000. *See Goheen*, 263 Or at 154 nn 15-17 (tracing statutory changes). In 1967, the legislature removed any limitation. Or Laws 1967, ch 544, § 1.

As pertinent here, by enacting ORS 18.560(1) in 1987,[9] the legislature in essence ended a 20-year hiatus in limitations on the amount of recovery in wrongful death actions. With respect to a wrongful death action, ORS 18.560(1) has the effect of reinstating a ceiling on that legislatively created remedy. The dispositive question is whether Article VII (Amended), section 3, prevented the legislature from so defining wrongful death claims.

We interpret a provision of the Oregon Constitution by examining "[i]ts specific wording, the case law surrounding it, and the historical circumstances that led to its creation." *Priest v. Pearce*, 314 Or 411, 415-46, 840 P2d 65 (1992). Nothing in the wording of Article VII (Amended), section 3, quoted above at note 6, restricts the legislature's authority to set a substantive limitation on a purely statutory remedy. The wording of Article VII (Amended), section 3, addresses only the power of courts to "re-examine[]" facts "tried by a jury." The case law surrounding Article VII (Amended), section 3, leads to the same conclusion. *See, e.g., Buchanan*, 66 Or at 510 (describing effect of that amendment). Finally, there is no suggestion in the circumstances that led to the creation of Article VII (Amended), section 3, that that provision was intended to restrict the legislature's authority to set a substantive limitation on a purely statutory remedy. Rather, the purpose of Article VII (Amended), section 3, "was to bring about an improved administration of justice by reducing retrials to a minimum and so eliminating delay and expense." Lusk, 35 Or L Rev at 3. *See also* Thomas

---

[9] Or Laws 1987, ch 774, § 6.

H. Tongue, *In Defense of Juries As Exclusive Judges of the Facts*, 35 Or L Rev 143 (1956) (agreeing with Justice Lusk's assessment of the purpose of Article VII (Amended), section 3); Pamphlet Containing Measures to be Submitted to Voters of Oregon, November 8, 1910, at 176-77 ("The purpose of this amendment is to * * * remove the pretext for new trials in those cases in which substantial justice is done by the verdict and judgment, but in which the trial court may have made a technical mistake.").

The right of action for wrongful death was created by the legislature in 1862, and it was created with a limitation on the amount recoverable. When the voters adopted Article VII (Amended), section 3, in 1910, the maximum amount recoverable in a statutory wrongful death action was $7,500. Lord's Oregon Laws, ch VI, § 380, p 326 (1910). Although voters told the courts not to "re-examine" facts "tried by a jury," Art VII (Amended), § 3, there is no indication in wording, case law, or history that the voters meant to undo the extant dollar limit on wrongful death actions. The removal, in 1967, of any limitation on the amount recoverable in a wrongful death action did not place the issue of dollar limits beyond the legislature's power to act, nor clothe the legislature's creation with constitutional guarantees not present at its inception.

In summary, after examining the wording of Article VII (Amended), section 3, the case law surrounding it, and the historical circumstances that led to its creation, we have found no suggestion that Article VII (Amended), section 3, restricts the legislature's authority to set a maximum recovery in statutory wrongful death actions. Its authority in that regard is not diminished by the fact that the maximum recovery is set in a general statute that applies to wrongful death actions, rather than in the wrongful death statute itself.

The Court of Appeals erred when it held that application of ORS 18.560(1) to plaintiff's wrongful death action violated Article VII (Amended), section 3, of the Oregon Constitution. The trial court correctly held that ORS 18.560(1) does not violate the Oregon Constitution as applied in this case.

## D. Federal Constitutional Arguments

Because plaintiff's statutory and state constitutional claims are not well taken, we address her federal constitutional claims. Plaintiff argues that application of ORS 18.560(1) violates her rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

### 1. Substantive Due Process

Plaintiff argues that application of ORS 18.560(1) to this wrongful death claim violates her right to substantive due process under the Fourteenth Amendment. Plaintiff argues that ORS 18.560(1) deprives her of an important property interest (her right to collect damages), without furthering a substantial state interest.

In *Duke Power Co. v. Carolina Env. Study Group*, 438 US 59, 98 S Ct 2620, 57 L Ed 2d 595 (1978), the Supreme Court of the United States rejected a substantive due process challenge to a federal statute that imposed a limitation on liability for nuclear accidents resulting from the operation of federally licensed private nuclear power plants. The Court stated:

> "The liability-limitation provision * * * emerges as a classic example of an economic regulation — a legislative effort to structure and accommodate the burdens and benefits of economic life. It is by now well established that [such] legislative Acts ... come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. That the accommodation struck may have profound and far-reaching consequences, contrary to appellees' suggestion, provides all the more reason for this Court to defer to the [legislative] judgment unless it is demonstrably arbitrary or irrational." 438 US at 83-84 (citations omitted; internal quotation marks omitted; footnote omitted).

The Oregon legislature did not act in a "demonstrably arbitrary or irrational" way when it enacted ORS 18.560(1). ORS 18.560 was adopted by the legislature in 1987, as part of Senate Bill 323. Or Laws, 1987, ch 774, § 6. The legislative history of that provision shows that the purpose of the limitation on noneconomic damages, found in

ORS 18.560(1), was to reduce the costs of insurance premiums and litigation. *See, e.g.*, Tape recording, House Judiciary Committee, Subcommittee #1, SB 323, April 29, 1987, Tape 466 at 133-200 (statements of Richard Egan, City-County Insurance Trust, and Representative Dave Dix) (discussing purposes and effects of statutory limits on damages awards); Testimony, Senate Judiciary Committee, SB 323, February 3, 1987, Ex A at 12 (testimony of John H. Holmes for Citizens' Initiative for Equity in the Legal System) ("A limit on non-economic damages * * * will improve the justice system, make economic sense, result in the availability of more insurance, result in better insurance rates for the consumers, provide predictability in the reinsurance markets of the world, and result in a more reasonable cost to the public of all those goods and services that have been affected by the escalating costs in this area.").[10]

The legislature enacted ORS 18.560(1) in response to a perceived threat of rising insurance and other costs. There existed a rational basis for the legislature to enact ORS 18.560(1). Accordingly, application of ORS 18.560(1) to plaintiff's claim does not violate her rights to substantive due process under the Fourteenth Amendment to the United States Constitution.

## 2. *Equal Protection*

Plaintiff argues that application of ORS 18.560(1) to this wrongful death claim violates her right to equal protection under the Fourteenth Amendment. She argues that the statute unreasonably disadvantages those who receive jury awards of noneconomic damages in excess of $500,000, as contrasted to those who receive awards of noneconomic damages equal to or less than $500,000. Her argument here is

---

[10] The legislative history of the noneconomic damages limits in ORS 18.560(1) has been aptly summarized as follows:

"In enacting the cap, the Oregon Legislature sought to control the escalating costs of the tort compensation system. The legislature determined that the cap would put a lid on litigation costs, which in turn would help control rising insurance premium costs for Oregonians. The legislature listened to hours of testimony on the insurance and tort crisis, and how reform was needed in order to salvage the system." Kathy T. Graham, *1987 Oregon Tort Reform Legislation: True Reform or Mere Restatement?*, 24 Willamette L Rev 283, 292 (1988) (footnote omitted).

similar to her argument under Article I, section 10, of the Oregon Constitution, discussed above. 322 Or at 289-90.

The Supreme Court of the United States recently has stated that:

> "unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 US 1, 10, 112 S Ct 2326, 120 L Ed 2d 1, 12 (1992).

ORS 18.560(1) does not categorize plaintiff on the basis of an inherently suspect characteristic, such as race, sex, or alienage. And, as we have discussed above, ORS 18.560(1) does not jeopardize the exercise of a recognized fundamental right in this case, because the right to collect damages for wrongful death is a statutory right only, which has incorporated a dollar limit on recovery for most of its existence. We also concluded above that there existed a rational basis for the legislature to impose the statutory limit. For the foregoing reasons, application of ORS 18.560(1) to plaintiff's wrongful death action does not violate the Equal Protection Clause to the United States Constitution.

## V. CONCLUSION

The Court of Appeals correctly concluded that the jury could consider defendant Phillips' violation of certain federal regulations as evidence of negligence.

The Court of Appeals erred when it held that application of ORS 18.560 to this wrongful death action violated Article VII (Amended), section 3, of the Oregon Constitution.

The limit on noneconomic damages contained in ORS 18.560(1) provides one limit of $500,000 in this case.

Application of ORS 18.560(1) to this wrongful death action does not violate Article I, sections 10, 17, 20, or Article VII (Amended), section 3, of the Oregon Constitution. Application of ORS 18.560(1) to this wrongful death action does not violate the Fourteenth Amendment to the United States Constitution.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed.

**FADELEY, J.,** concurring.

I concur in the result and the *necessary* principle and reasoning stated in the lead opinion. I do not join the remaining *dicta*.

The discussion of whether a statutory remedy is "substantial" — a discussion engaged in to support the argument that less than a full remedy may be substituted for a full one by act of the legislature — is unnecessary and wide of the mark. In this case, there would be no remedy at all but for an act of the legislature. The discussion of various ways that the traditional power of a jury may be drained away from that institution to increase the power of either the legislature or the judiciary is also unnecessary, and too far afield.

The following four quotes from the lead opinion, in which I concur, dispose of this case:

1

"For the purpose of this case, we need to decide only how ORS 18.560(1) applies to a [statutory] wrongful death claim. In that context, the application of ORS 18.560(1) is clear. This 'civil action' seeks damages arising out of the death of 'one person.' ORS 18.560(1).

"ORS 30.020(1), quoted above at note 2, provides, as relevant here, that the personal representative of a decedent may 'maintain an action against the wrongdoer.' That is, the personal representative may bring only one action when there is only one decedent, no matter how many beneficiaries there may be. Here, there was but one decedent, and plaintiff brought one action. Under ORS 18.560(1), that action is subject to a single limit of $500,000." 322 Or at 288-89.

2

"Plaintiff brought this action under ORS 30.020. That statute entitles plaintiff to damages in an amount that 'includes reasonable' medical, burial, and memorial services rendered for the decedent, ORS 30.020(2)(a), and 'would justly, fairly and reasonably' compensate plaintiff for pecuniary loss to the decedent's estate and loss of the society, companionship, and services of the decedent, ORS 30.020(2)(c) & (d). The jury awarded $100,000 in 'economic

damages,' which are 'objectively verifiable monetary losses,' including expenses for medical, burial, and memorial services and loss to an estate (including loss of services to an estate). ORS 18.560(2)(a)." 322 Or at 290-91.

### 3

"In Oregon, as plaintiff acknowledges, the right of action for wrongful death is statutory. '[A]t common law no remedy by way of a civil action for wrongful death existed.' *Richard v. Slate*, 239 Or 164, 167, 396 P2d 900 (1964). In *Goheen v. General Motors Corp.*, 263 Or 145, 153-54, 502 P2d 223 (1972), this court traced the history and development of wrongful death actions in Oregon and stated:

> " 'The original Oregon Wrongful Death Act was included in the original Deady Code in 1862. * * * [It] did not specifically limit awards of damages to any named dependents. Neither did it specifically limit damages to pecuniary loss, although total recovery was limited to $5,000. This limitation on the amount of recovery was increased from time to time, and was finally removed [by Oregon Laws 1967, chapter 554, section 1].' (Footnotes omitted.)

"There was no wrongful death statute in Oregon before the 1862 Deady Code. *Ibid.* * * * Because wrongful death actions are 'purely statutory,' they 'exist only in the form and with the limitations chosen by the legislature.' *Hughes v. White*, 289 Or 13, 18, 609 P2d 365 (1980)." 322 Or at 294.

### 4

"Nothing in the wording of Article VII (Amended), section 3, quoted above at note 6, restricts the legislature's authority to set a substantive limitation on a purely statutory remedy. * * *

"The right of action for wrongful death was created by the legislature in 1862, and it was created with a limitation on the amount recoverable. When the voters adopted Article VII (Amended), section 3, in 1910, the maximum amount recoverable in a statutory wrongful death action was $7,500. Lord's Oregon Laws, ch VI, § 380, p 326 (1910). Although voters told the courts not to 're-examine' facts 'tried by a jury,' Art VII (Amended), § 3, there is no indication in wording, case law, or history that the voters meant to undo the extant dollar limit on wrongful death actions. The removal, in 1967, of any limitation on the amount recoverable in a wrongful death action did not place the issue of dollar limits beyond the legislature's power to act, nor clothe the

legislature's creation with constitutional guarantees not present at its inception." 322 Or at 296-97.

The above-quoted material explains my reasons for concurring in the result.

Other constitutional provisions have been invoked by the parties. The short and sufficient answer is that there is no true class or discriminatory classification created by the statute conferring the right to recover for wrongful death. No further discussion of other state and federal constitutional provisions is needed.

**UNIS, J.,** concurring in part, specially concurring in part.

I join in all but Parts IV.A. and IV.B. of this court's opinion. With respect to Parts IV.A. and IV.B., I concur in the result reached by the court, but for reasons different from those expressed by the court.

"[C]onstitutional interpretation must meet the criteria of good legislation — it must be sensible, clear, precise and consistent — and more: it must also demonstrate fidelity to the constitution itself."[1] Constitutional interpretation also should be logical enough to avoid producing absurd results, clear enough to guide legislators, litigants, courts, and ordinary citizens, and precise enough to have some meaning beyond unfocused exhortation.[2] In this case, the court's interpretation of Article I, section 10, of the Oregon Constitution (the "remedy guarantee clause") does not, in my view, meet those criteria; it is another individually tenable but inconsistent opinion about the remedy guarantee clause.[3]

---

[1] David Schuman, *The Right to a Remedy*, 65 Temple L Rev 1197, 1219 (1992).

"And 'the constitution' toward which this fidelity is owed is not just the text; it is that much larger complex of principles, aspirations, and political theories the document embodies. The requirement of 'fidelity to the text,' in this context, is the relatively obvious and uncontroversial requirement that a court's explanation of the meaning of a given constitutional provision should demonstrate some logical connection to the words it purports to interpret, including their source, history, and position in the overall document. Further, 'fidelity' requires that the court be sensitive to the political culture of the constitutionally-defined community and reflect the community's most deeply held constitutive traditions." *Id.*

[2] *Id.* at 1219-20.

[3] This court's prior decisions about Article I, section 10, also have failed to satisfy those criteria. *See Hale v. Port of Portland*, 308 Or 508, 529, 783 P2d 506

Likewise, the court's interpretation of Article I, section 20, of the Oregon Constitution (the "equal privileges and immunities" provision) fails to address the appropriate sequence of inquiries to resolve plaintiff's claim under that constitutional provision.

The court today holds that ORS 18.560,[4] which places a $500,000 cap on noneconomic damages in certain

(1989) (Linde, J., concurring) (this court "has written many individually tenable but inconsistent opinions" about the remedy guarantee clause); David Schuman, *Oregon's Remedy Guarantee: Article I, section 10 of the Oregon Constitution*, 65 Or L Rev 35, 56 (1986) (the Oregon cases "indicate a judicial inability to formulate a coherent, consistent rule for applying the constitutional [remedy guarantee clause] mandate"). *See also* Note, *The Remedy Clause Analysis of Neher v. Chartier*, 74 Or L Rev 379, 397 (1995) (noting this court's "inconsistent and confusing" application of the remedy guarantee clause). The cases have been inconsistent with regard to the proper analysis under Article I, section 10. At times, the court has engaged in a balancing of interests, treating the remedy guarantee as a sort of substantive due process clause. *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 154 P 106 (1915). At other times, the court has required the legislature to replace an existing remedy with a substitute (*quid pro quo*). *Hale*, 308 Or at 508. At still other times, the court has appeared to view the clause as imposing no substantive limitations on the legislature's authority to abolish remedies. *See Sealey v. Hicks*, 309 Or 387, 788 P2d 435 (held statutory products liability state of repose did not violate the remedy guarantee clause in Article I, section 10, of the Oregon Constitution, even though it eliminated the plaintiff's remedy before the plaintiff suffered an injury), *cert den* 498 US 819, 111 S Ct 65, 112 L Ed 2d 39 (1990).

[4] ORS 18.560 provides:

"(1) Except for claims subject to ORS 30.260 to 30.300 [(the Oregon Tort Claims Act)] and ORS chapter 656 [(the Oregon Workers' Compensation Act)], in any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium, the amount awarded for noneconomic damages shall not exceed $500,000.

"(2) As used in this section:

"(a) 'Economic damages' means objectively verifiable losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less.

"(b) 'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment.

"(3) This section does not apply to punitive damages.

civil actions, does not violate Article I, section 10, of the Oregon Constitution as applied to a wrongful death action brought under ORS 30.020.[5] I agree with that conclusion, but not with the court's reasons to support it.

Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, *and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.*" (Emphasis added.)

Article I, section 10, as a whole, plainly is concerned with the administration of justice; "it provides an affirmative claim upon the state to provide a legal 'remedy' for an 'injury done' [to one's person, property, or reputation]." *State v. Burrow,*

---

"(4) The jury shall not be advised of the limitation set forth in this section."

[5] ORS 30.020 provides in part:

"(1) When the death of a person is caused by the wrongful act or omission of another, the personal representative of the decedent, for the benefit of [various specified persons] may maintain an action against the wrongdoer, if the decedent might have maintained an action, had the decedent lived, against the wrongdoer for an injury done by the same act or omission. * * *

"(2) In an action under this section damages may be awarded in an amount which:

"(a) Includes reasonable charges necessarily incurred for doctors' services, hospital services, nursing services, other medical services, burial services and memorial services rendered for the decedent;

"(b) Would justly, fairly and reasonably have compensated the decedent for disability, pain, suffering and loss of income during the period between injury to the decedent and the decedent's death;

"(c) Justly, fairly and reasonably compensates for pecuniary loss to the decedent's estate;

"(d) Justly, fairly and reasonably compensates the decedent's spouse, children, stepchildren, stepparents and parents for pecuniary loss and for loss of the society, companionship and services of the decedent; and

"(e) Separately stated in finding or verdict, the punitive damages, if any, which the decedent would have been entitled to recover from the wrongdoer if the decedent had lived."

As the majority explains, *see* 322 Or at 286 n 2, "[t]hat part of ORS 30.020 was amended to its present form by Oregon Laws 1991, chapter 471, section 1. Those amendments apply only to claims arising on or after September 29, 1991." The 1991 amendments do not affect this case, and, accordingly, we cite to the current version of ORS 30.020, rather than referring to ORS 30.020 (1989).

293 Or 691, 695 n 5, 653 P2d 226 (1982). The remedy guarantee clause "is directed against the denial of a legal remedy to one who has a claim, arising from 'injury done him in his person, property, or reputation,' that has its legal source outside [Article I, section 10] itself. For such a recognized legal injury, 'every man shall have remedy by due course of law.' " Hans A. Linde, *Without "Due Process": Unconstitutional Law in Oregon*, 49 Or L Rev 125, 136 (1970). *See Davidson v. Rogers*, 281 Or 219, 223, 574 P2d 624 (1978) (Linde, J., concurring) (the remedy guarantee clause is addressed to litigants who seek "to secur[e] the right to set the machinery of the law in motion to recover for harm already done to one of the stated kinds of interest").

It is well established that the legislature has the authority to determine what constitutes a legally cognizable injury. *Sealey v. Hicks*, 309 Or 387, 394, 788 P2d 435, *cert den* 498 US 819, 111 S Ct 65, 112 L Ed 2d 39 (1990). This court's decisions long have established that the remedy guarantee clause was not intended to "freeze" the common law, equitable, and statutory remedies that existed in 1859 when the Oregon Constitution was adopted. *See, e.g., Neher v. Chartier*, 319 Or 417, 427-28, 879 P2d 156 (1994) (" 'Article I, section 10, [of the] Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static' ") (quoting *Noonan v. City of Portland*, 161 Or 213, 249, 88 P2d 808 (1939)). Moreover, this court has never held that the remedy guarantee clause prohibits any and all legislative elimination or modification of remedies. Such an approach would work drastic changes on well-settled doctrines such as statutes of limitation, statutes of repose, and sovereign tort immunity, and statutory schemes such as workers' compensation. Prior decisions of this court, as well as the decision of the court in this case, *see* 322 Or at 290-92, indicate further that the remedy guarantee clause provides "more than a procedural guarantee that the 'due course of law' will be open to 'every [person]' who is entitled to a remedy under the substantive law, whatever that might be at any time."[6] *See,*

---

[6] Hans A. Linde, *Without "Due Process": Unconstitutional Law in Oregon*, 49 Or L Rev 125, 136 (1970). *See also Hale*, 308 Or at 527 (Linde, J., concurring) ("the assurance of a 'remedy' for 'injury' to specified interests appears to promise more than protection against delay and other procedural obstructions").

*e.g., Hale v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989) (certain limits on damages contained in the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300, did not violate Article I, section 10, because OTCA broadened the scope of city's liability); *Holden v. Pioneer Broadcasting Co.*, 228 Or 405, 365 P2d 845 (1961) (debating the constitutionality of a statute that made recovery of general damages for defamation by a media defendant contingent on the defendant's refusal to publish a retraction, in terms of whether the Legislative Assembly could make retraction an alternate "remedy" for general damages, and holding that retraction is an "alternative remedy" that can satisfy Article I, section 10).[7]

"The text [of the remedy guarantee clause] offers three verbal handholds: [1] What harm to one of the protected interests is an 'injury'? [2] What qualifies as a 'remedy'? [3] Is this remedy available 'in due course of law'?" *Hale*, 308 Or at 529 (Linde, J., concurring). Those three verbal handholds provide a useful analytical framework for resolving a remedy guarantee clause claim.

It is undisputed that the harm — economic and noneconomic loss — suffered as a result of wrongful death and for which plaintiff seeks recovery in this civil tort action qualifies as a legally cognizable injury to one of the stated types of interests protected by Article I, section 10.[8] Indeed,

---

[7] In *Davidson v. Rogers*, 281 Or 219, 574 P2d 624 (1978), this court refused to overrule *Holden v. Pioneer Broadcasting Co.*, 228 Or 405, 365 P2d 845 (1961), and held that Oregon's retraction statute, ORS 30.160 to ORS 30.170, did not violate Article I, section 10, of the Oregon Constitution. Justice Linde's concurrence in *Davidson* agreed with the majority that the legislature can readjust the duty of care if the cause of action is retained. *Davidson*, 281 Or at 224 (Linde, J., concurring). Consequently, Justice Linde concurred with the view that the retraction statute is constitutional under Article I, section 10. Justice Linde, however, rejected the majority's view concerning the "alternative remedy" of retraction. Justice Linde reasoned that "the question whether retraction of a defamatory statement is an 'alternative remedy' that can satisfy Article I, section 10, was and remains a false issue," *id.* at 222, because the statute allows, but does not compel, the defendant to publish a retraction. According to Justice Linde, "[i]f an optional retraction plays a role at all in the validity of limiting the measure of damages for defamation, it would have to be that the retraction is deemed to reduce the 'injury,' not that it is a substitute legal remedy." *Id.* at 224.

[8]

"Not every harm, or even every old common law cause of action, necessarily is an injury to a 'person,' or to 'property,' or to 'reputation'; a simple, perhaps debatable, example is an ordinary breach of contract." *Hale*, 308 Or at 529 n 3 (Linde, J., concurring).

the legislature, in enacting the wrongful death statute, ORS 30.020, specifically recognizes that the legal "injury" that plaintiff, in this civil action, established at trial is cognizable in economic and noneconomic damages. This is not a civil tort action in which the legislature has sought to limit recovery by redefining what constitutes a legally cognizable injury. ORS 18.560(1), which applies to civil actions generally, regardless of the substantive theory of recovery, distinguishes and deals differently with economic damages (objectively verifiable monetary losses) from noneconomic damages (subjective, nonmonetary losses, such as loss of society and companionship). ORS 18.560(1) allows recovery for all economic damages, but places a $500,000 cap on noneconomic harm.

The question before this court in this case, therefore, is whether ORS 18.560, which allows recovery for all objectively verifiable monetary losses (*i.e.*, economic damages), but limits the financial scope of the remedy for subjective, nonmonetary losses (*i.e.*, noneconomic damages) to $500,000, qualifies as a legal "remedy" that is available "in due course of law." I would answer that question in the affirmative.

There is no question that the legislature has the authority to determine what constitutes a legally cognizable injury and to abolish an existing statutorily recognized, legally cognizable injury. The legislature also can redefine a statutorily recognized, legally cognizable injury. Moreover, the legislature can distinguish and deal differently with economic loss from noneconomic loss for mental suffering or other noneconomic harm. For example, the legislature could provide by statute that only economic damages arising out of the wrongful death of a person are recoverable in a wrongful death action brought under Oregon statutory law.[9] Under such a statute, the analysis under Article I, section 10, would be that the plaintiff suffered no legal "injury" cognizable in noneconomic damages. The legislature cannot, however, abolish a remedy and at the same time recognize a legally

_____

[9]

"[T]here is no common law cause of action for wrongful death." *Goheen v. General Motors Corp.*, 263 Or 145, 151, 502 P2d 223 (1972).

cognizable injury. *Neher*, 319 Or at 424.[10] Once a legislature determines that a legal "injury" is cognizable in both economic and noneconomic damages, then, in my view, the legislature may not limit the financial scope of the remedy for those damages objectively measurable in money (*i.e.*, economic damages), but the legislature may limit the financial scope of the remedy for noneconomic harm. ORS 18.560(1) satisfies these criteria. That statute allows recovery of (1) objectively verifiable monetary losses (economic damages), and (2) noneconomic damages (subjective, non-monetary losses) in an amount not to exceed $500,000. The remedy afforded by ORS 18.560(1), therefore, qualifies as a legal "remedy" that Article I, section 10, of the Oregon Constitution guarantees,[11] and that "remedy" is available "in due course of law."

The majority concludes that Article I, section 10, is not violated because plaintiff has not been denied a "substantial remedy." The majority states:

"Plaintiff brought this action under ORS 30.020. That statute entitles plaintiff to damages in an amount that

---

[10] In *Neher v. Chartier*, 319 Or 417, 879 P2d 156 (1994), this court concluded that ORS 30.265(3)(a) (1993), which shielded public bodies, their officers, agents and employees from civil liability for injury to persons covered under the Workers' Compensation Law, violated Article I, section 10, of the Oregon Constitution. The plaintiff argued that the three thousand dollar death benefit provided by the Workers' Compensation Law was not a substantial remedy. The defendants contended that Article I, section 10, guarantees a remedy only in those rights of action existing at common law. Therefore, the defendants reasoned, because a wrongful death action is created by statute, Article I, section 10, is not offended even if a plaintiff is remediless. The *Neher* court noted that it previously had rejected that line of reasoning in *Noonan v. City of Portland*, 161 Or 213, 88 P2d 808 (1939). *Neher*, 319 Or at 427. In *Noonan*, 161 Or at 249, the court stated that "Article I, section 10 * * * was not intended to give anyone a vested right in the law * * * nor was it intended to render the law static." "The legislature cannot, however, abolish a remedy and at the same time recognize the existence of a right[.]" *Neher*, 319 Or at 427 (quoting *Noonan*, 161 Or at 249) (citations omitted in original). The *Neher* court held that, although tort immunity of public officers and employees is not *per se* unconstitutional, a party must not be left without a remedy. Therefore, this court held the provision unconstitutional because the nominal award accrued to the decedent's estate, leaving the decedent's parents entirely remediless. *Neher*, 319 Or at 426-27. In a wrongful death action, the personal representative represents the interests of both the estate and the decedent's parents. *Id.* at 426 (citing ORS 30.020(1) and 30.020(2)(d) (1993) (wrongful death statute)).

[11] Because the right of action for wrongful death is statutory, it is unnecessary in this case to pursue the question of how far the legislature must retain money damages as a constitutionally required remedy for noneconomic damages when they existed at common law.

'includes reasonable' medical, burial, and memorial services rendered for the decedent, ORS 30.020(2)(a), and 'would justly, fairly and reasonably' compensate plaintiff for pecuniary loss to the decedent's estate and loss of the society, companionship, and services of the decedent, ORS 30.020-(2)(c) & (d). The jury awarded $100,000 in 'economic damages,' which are 'objectively verifiable monetary losses,' including expenses for medical, burial, and memorial services and loss to an estate (including loss of services to an estate). ORS 18.560(2)(a). The jury also awarded $1.5 million in 'noneconomic damages,' which are 'subjective, nonmonetary losses,' including loss of society and companionship. ORS 18.560(2)(b). Applying ORS 18.560(1), the trial court gave plaintiff judgment for noneconomic damages of $500,000, in addition to the $100,000 in economic damages, for a total of $600,000.

"Plaintiff has not been left without a remedy. She has received $600,000, comprised of $500,000 in noneconomic damages and $100,000 in economic damages. There was no statutory limit on the latter category of damages. Although that remedy is not precisely of the same extent as that to which plaintiff was entitled before the enactment of ORS 18.560(1), that remedy is substantial. * * *

"The remedy for wrongful death is substantial, not only because 100 percent of economic damages plus up to $500,000 in noneconomic damages is a substantial amount, but also because the statutory wrongful death action in Oregon has had a low limit on recovery for 113 years of its 133-year history. *See* 322 Or at 294, below (discussing history of wrongful death action in Oregon). As noted there, the wrongful death claim came into existence with a limitation, and the highest previous limitation (1961-67) was $25,000. In relation to that history, the present remedy is substantial.

"Plaintiff's Article I, section 10, argument is not well taken." 322 Or at 290-91.

The majority's analysis is based on the following passage in *Hale*, 308 Or at 523:

"Article I, section 10, is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy. * * * [T]he remedy need not be precisely of the same type or extent; it is enough that the remedy is a substantial one."

I was not a member of this court when *Hale* was decided, and I have reservations about the portion of *Hale* on which the majority relies, namely the concept that the legislature may abolish a remedy, provided that what remains is "substantial," as the majority applies that term in this case. In my view, the "substantial" test adopted by the court in this case is an unclear, imprecise, and flawed basis for applying the Oregon constitutional remedy guarantee clause.

The first problem with the "substantial" test is that it is vague and gives no guidance to legislators, litigants, or ordinary citizens as to how courts will apply the standard. The "substantial" test leaves open too many questions, and, more important, it provides the bench, bar, and Legislative Assembly with too few tools with which to find the answers. The word "substantial," by itself, offers no means by which to draw the line between a permissible and an impermissible limitation on a remedy. The "substantial" test calls for the comparison of immeasurables. The determination of what is "substantial" is little more than a determination of whether or not a remedy has in fact been lost. Because of its numerous, related, but distinct meanings,[12] the term "substantial" is not useful. For example, what is meant by that term? How is the "substantiality" of a remedy to be measured? Is it measured in reference to a plaintiff's actual injuries, or is it measured by an abstract conclusion that a particular remedy is "substantial" as to a particular class of injuries? Is the "substantiality" of a remedy to be measured by reference to economic damages or by both economic and noneconomic damages? How do you determine substantiality

---

[12] For example, "substantial" is defined as follows:

"Of real worth and importance; of considerable value; valuable. Belonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable. * * * Something worthwhile as distinguished from something without value or merely nominal." Black's Law Dictionary 1428 (6th ed 1990).

"1. Composed of or relating to things that occupy space and can be perceived by the senses.

"2. Large in number or yield.

"3. Having great significance.

"4. Having actual reality." Roget's II: The New Thesaurus 970 (1988).

Synonyms for "substantial" are: abundant, ample, considerable, plentiful, important, meaningful, notable, significant, massive, sound, and stable. Novell Perfect Office WordPerfect V 6.1.

in relation to the history of the remedy for the particular legally cognizable injury? How are trial courts to assess the "substantiality" of a remedy for a particular plaintiff's legally cognizable injury? Do appellate courts give deference to a trial court's determination that a particular remedy is substantial? If so, will inconsistent decisions result from case to case? To prevent such inconsistency, will it be necessary for this court to be the final arbiter on the question of the "substantiality" of a remedy in a particular case? If so, what formula will this court use to make that determination?

The majority holds that a single $500,000 limit on noneconomic damages, in addition to 100 percent of economic damages (in this case, $100,000), for a total of $600,000 is a "substantial" remedy for injuries that the jury valued at $1.5 million. Would $500,000 be a substantial remedy for a $5 million dollar injury? $10 million? $100 million?

If a "substantial" remedy is somehow measured in abstract terms (*i.e.*, if the court were to hold that, for any plaintiff, $500,000 is a substantial remedy for *any* wrongful death), how are the trial courts to deal with *stare decisis* in the future? If a court today declares that, in the abstract, $500,000 is a substantial remedy under Article I, section 10, will that same $500,000 be "substantial" in 20 years? In 100 years? How much must inflation reduce the value of a particular sum of money before this court will reexamine a conclusion that a particular sum is a "substantial" remedy?

Whichever approach the trial courts take in determining whether a remedy is "substantial," there is a great danger of haphazard results. A determination that a particular remedy for a particular injury is "substantial" necessarily is a policy decision. Asking this court to decide whether a particular remedy is "substantial" places this court in one of two untenable positions: either this court defers to the legislative judgment that a particular remedy is "substantial," thus negating any meaningful judicial review, or this court substitutes its own judgment as to whether it believes that the remedy afforded by the legislature is adequate, leading to, in effect, judicial legislation. In the light of these questions, I believe that this court should reconsider any analysis based on an evaluation of whether a remedy is "substantial."

This court's failure to explain what is meant by the term "substantial" is not unprecedented. This court cannot look to the *Hale* decision for guidance, because the court in *Hale* did not explain what it meant by the term "substantial." Nor can it look to the cases from which *Hale* purported to derive the standard, because those decisions do not contain any analysis centered on whether a remedy is "substantial."[13] Despite the language from *Hale* on which today's majority relies, the real rationale for the court's decision in *Hale* is what Professor Schuman calls the *quid pro quo* approach. *See* Schuman, 65 Temple L Rev at 1210-12 (describing *quid pro quo* approach to remedy guarantees, which allows the legislature to eliminate one remedy or claim only if it provides a replacement). In *Hale*, the court held, among other things, that the liability limits of the Oregon Tort Claims Act (OTCA) did not violate Article I, section 10, of the Oregon Constitution as applied to cities. *Hale*, 308 Or at 523. The statutes at issue in *Hale* provided that the cities could be liable for both proprietary and governmental functions, but also provided a monetary cap on a city's liability under the OTCA. ORS 30.265(1), 30.270(1) (1987).[14] The majority opinion in *Hale* stated that cities

---

[13] On one occasion, this court used the term "substantial" with regard to analysis under Article I, section 10. In *Holden*, 228 Or at 414, this court stated in *dictum*: "[T]he form of the remedy could be changed [by the legislature] if the substitute was a *substantial equivalent* of that which was taken." (Emphasis added.) If we were to apply that rationale to the present case, ORS 18.560 would not satisfy Article I, section 10. Immediately before ORS 18.560 was enacted, a plaintiff had an unlimited right to recovery for noneconomic damages. Since enactment of ORS 18.560, that recovery is limited to $500,000. The new remedy is not the "substantial equivalent" of the prior limitless remedy, as demonstrated by this case — $500,000 is not the "substantial equivalent" to $1.5 million by anyone's measure. *Holden* was not cited by the majority opinion in *Hale*, although it was cited by Justice Linde in his concurring opinion. 308 Or at 527-30 (Linde, J., concurring).

[14] ORS 30.265(1) (1987) provides in part:

"Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function[.]"

ORS 30.270(1) (1987) limits the potential liability of public bodies:

"Liability of any public body or its officers, employees or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

"(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.

traditionally had shared in the state's sovereign immunity as to "governmental" functions, but that they did not enjoy such immunity as to "proprietary" functions. *Hale*, 308 Or at 518. Because the OTCA broadened the scope of a city's liability by making cities liable for both types of functions, the *Hale* court held that capping damages under the OTCA did not violate Article I, section 10:

> "It is clear from the language of ORS 30.265(1) itself that the legislature intended to meet fully the requirements of Article I, section 10, when it enacted the statute. *The statute specifically identifies the new balance it strikes between municipal corporations and those to whom certain of those corporations could, under limited circumstances, formerly have been liable*:
>
> > " 'Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employees and agents acting within the scope of their employment or duties, *whether arising out of a governmental or proprietary function* * * *.' (Emphasis added.)
>
> "The class of plaintiffs has been widened by the legislature by removing the requirement that an injured party show that the municipal corporation's activity that led to the injury was a proprietary one. At the same time, however, a limit has been placed on the size of the award that may be recovered. *A benefit has been conferred, but a counterbalancing burden has been imposed. This may work to the disadvantage of some, while it will work to the advantage of others*. But all who had a remedy continue to have one. This may not be what plaintiff wants. It may not even be what this court, if it were in the business of making substantive law on this subject, would choose to enact. But it is within the legislature's authority to enact in spite of the limitations of Oregon Constitution, Article I, section 10." *Id.* at 523 (emphasis added).

The rationale that this court used to uphold the cap on damages in *Hale* cannot be used to sustain the cap on

---

"(b) $100,000 to any claimant for all other claims arising out of a single accident or occurrence.

"(c) $300,000 for any number of claims arising out of a single accident or occurrence."

noneconomic damages in this case. In *Hale*, the court justified the damages cap under the OTCA because "[a] benefit ha[d] been conferred, but a counterbalancing burden ha[d] been imposed." *Id.* In enacting ORS 18.560, the legislature has not struck a "new balance."

Finally, although I agree with the result reached by the court concerning plaintiff's claim under Article I, section 20, of the Oregon Constitution (the "equal privileges and immunities" provision), the court, in reaching that result, fails to address the appropriate sequence of inquiries to resolve plaintiff's claim under that constitutional provision. For the appropriate methodological approach to analyzing a claim under Article I, section 20, *see* David Schuman, *The Right to "Equal Privileges and Immunities": A State's Version of "Equal Protection,"* 13 Vermont L Rev 221, 244 (1988).

Durham, J., joins in this concurring in part, specially concurring in part, opinion.