ORTEGA, P. J.
*338 *675 On remand from the Supreme Court, we are tasked with reconsidering whether, in light of Horton v. OHSU , 359 Or. 168, 376 P.3d 998 (2016), the $500,000 statutory cap on noneconomic damages in ORS 31.710(1) is unconstitutional when applied to plaintiffs' noneconomic damages awards.[1] For the reasons explained below, we conclude that reducing plaintiffs' noneconomic damages awards under ORS 31.710(1) would violate the remedy clause of Article I, section 10, of the Oregon Constitution. Accordingly, we affirm the limited judgment in favor of plaintiffs.
The relevant facts on remand are undisputed. Plaintiff Kevin Rains fell almost 16 feet to the ground when a defective wood board broke at his job site. He suffered severe injuries that resulted in paraplegia. He brought a claim of strict products liability against the retailer, Stayton Builders Mart, and the manufacturer of the defective board, Weyerhaeuser Company. His wife, plaintiff Mitzi Rains, brought a claim for loss of consortium against those same parties. The jury returned a verdict in favor of plaintiffs and found that Kevin had suffered $5,237,700 in economic damages and $3,125,000 in noneconomic damages, and that Mitzi had suffered $1,012,500 in noneconomic damages. The jury also found that Weyerhaeuser was 45 percent at fault, Stayton was 30 percent at fault, and Kevin was 25 percent at fault for his injuries. After trial, Weyerhaeuser moved to reduce each of plaintiffs' noneconomic damages awards to $500,000 based on ORS 31.710(1). The trial court denied that motion, concluding that Article I, section 17, of the Oregon Constitution precluded ORS 31.710(1) from limiting noneconomic damages on plaintiffs' claims. Accordingly, the court, after accounting for Oregon's comparative-fault scheme and the jury's finding that Kevin was 25 percent at fault, entered a limited judgment awarding Kevin *676 $6,272,025 and Mitzi $759,375 against Weyerhaeuser and Stayton.[2] *339 Weyerhaeuser appealed the limited judgment, asserting, as relevant on remand, that the trial court had erred by not reducing plaintiffs' noneconomic damages awards under ORS 31.710(1) to $500,000. At the time of Weyerhaeuser's appeal, existing case law dictated that the state of the common law in 1857 determined whether Article I, section 17, limited the legislature's authority to alter a cause of action or reduce the amount of a jury award. See Klutschkowski v. PeaceHealth , 354 Or. 150, 177, 311 P.3d 461 (2013) (explaining that ORS 31.710(1) violated Article I, section 17, in those classes of cases in which a jury trial was customary in 1857, or in cases of "like nature"). On appeal, we concluded that claims for strict products liability had "very little in common with the type of product liability negligence claim that existed in 1857." Rains v. Stayton Builders Mart, Inc. , 264 Or.App. 636, 662, 336 P.3d 483 (2014), aff'd in part, rev'd in part , 359 Or. 610, 375 P.3d 490 (2016). As a result, we decided that applying ORS 31.710(1) to Kevin's claim did not violate Article I, section 17. Id. at 665, 336 P.3d 483. However, as to Mitzi's claim, we determined that a loss of consortium claim existed as of 1857; therefore, Article I, section 17, precluded application of the noneconomic damages cap to Mitzi's award. Id. at 666, 336 P.3d 483. Accordingly, we reversed and remanded plaintiffs' limited judgment for the trial court to apply ORS 31.710(1) to Kevin's damage award. Id. at 677-78, 336 P.3d 483. *677 After the Supreme Court accepted review of our decision, it issued its decision in Horton , which significantly changed the legal framework for analyzing constitutional limitations on the legislature's ability to substantively alter or adjust a person's remedy for injuries to person, property, and reputation. In Horton , the court overruled Lakin v. Senco Products, Inc. , 329 Or. 62, 987 P.2d 463, modified , 329 Or. 369, 987 P.2d 476 (1999), and concluded that Article I, section 17, does not independently restrict the legislature's ability to impose a statutory damages cap on specific claims.[3] 359 Or. at 244-45, 376 P.3d 998. In doing so, the court negated the historical analysis that we had undertaken on appeal as to whether Article I, section 17, precluded application of ORS 31.710(1) to Kevin and Mitzi's noneconomic damages awards.
In Horton , the court also reexamined at length whether the remedy clause of Article I, section 10, of the Oregon Constitution[4] provides a substantive guarantee of a remedy in certain cases. 359 Or. at 173-225, 376 P.3d 998. The court answered that question affirmatively, but in the process it overruled Smothers v. Gresham Transfer, Inc. , 332 Or. 83, 23 P.3d 333 (2001), which had "sought to provide a definitive interpretation" of the remedy clause. Horton , 359 Or. at 175, 376 P.3d 998. In doing so, the court reinvigorated pre- Smothers cases applying Article I, section 10, and called into question the viability of post- Smothers Article I, section 10, cases that had relied on the Smothers construct.
*340 See Vasquez v. Double Press Mfg., Inc. , 288 Or.App. 503, 516, 406 P.3d 225 (2017) (explaining the effect of Horton on the remedy clause analysis). In short, the court concluded in Horton that the remedy clause of Article I, section 10, "limits the legislature's substantive authority to alter or adjust a person's remedy *678 for injuries to person, property, and reputation." 359 Or. at 173, 376 P.3d 998. However, it did away with the construct from Smothers that, to determine if the remedy clause guarantees a remedy for a certain claim, courts had to determine whether, at the time that the Oregon Constitution was drafted in 1857, the common law of Oregon recognized a cause of action for the alleged injury. See Smothers , 332 Or. at 124, 23 P.3d 333. Instead, as we examine in more detail later in this opinion, the court concluded that "the remedy-clause analysis focuses on the effect of legislation on the common law as it existed when the legislature acted, taking into account how the common-law may have changed over time 'to meet the changing needs of the state.' " Schutz v. La Costita III, Inc. , 288 Or.App. 476, 485, 406 P.3d 66 (2017) (quoting Horton , 359 Or. at 218, 376 P.3d 998 ).
Shortly after Horton , the court issued its opinion on review in this case. Rains v. Stayton Builders Mart, Inc. , 359 Or. 610, 375 P.3d 490 (2016). In that opinion, the court noted that we did not have the benefit of Horton in addressing the parties' arguments under Article I, section 17. Id. at 639, 375 P.3d 490. Accordingly, the court vacated our decision "with respect to the parties' assignments of error relating to the application of the statutory damage cap to plaintiffs' noneconomic damage awards" and remanded to us "for reconsideration of those assignments of error in light of Horton ." Id . at 639-40, 375 P.3d 490. In a footnote, the court also noted that depending on how we resolved the parties' arguments under Article I, section 17, it may be appropriate for us to "consider plaintiffs' alternative challenges to the application of the statutory damage cap to their claims based on Article I, section 10, as interpreted in Horton ." Id. at 640 n. 11, 375 P.3d 490. The court explicitly expressed no opinion on that issue, and it explicitly expressed no opinion "as to whether that issue was properly raised, preserved, or developed below, [leaving] those questions, in the first instance, to the Court of Appeals on remand." Id.
On remand, we granted the parties permission to file supplemental briefing. In addition, the Oregon Trial Lawyers Association (OTLA) appeared as amicus curiae and filed a brief in support of plaintiffs, and the Oregon Liability Reform Coalition and Associated Oregon Industries *679 (collectively AOI) appeared as amicus curiae and filed a joint brief in support of Weyerhaeuser.
Plaintiffs acknowledge on remand that Horton foreclosed any argument that Article I, section 17, prohibited application of ORS 31.710(1) to their damages awards. Instead, plaintiffs ask us to affirm the trial court's limited judgment in their favor because, under Horton , the application of ORS 31.710(1) in this case violates the remedy clause of Article I, section 10. In particular, plaintiffs argue that application of ORS 31.710(1) violates the remedy clause in this case because it would leave them without a substantial remedy. OTLA supports plaintiffs' argument and also asserts that ORS 31.710(1) is facially unconstitutional under the remedy clause because it imposes a "substitute remedy without any regard to the underlying injury" and fails to provide "any benefit in exchange for the remedy it purports to limit"-i.e. , it does not provide a quid pro quo .
Weyerhaeuser argues that plaintiffs' challenge to ORS 31.710(1) under the remedy clause is precluded because they are raising it for the first time on remand. Alternatively, Weyerhaeuser contends that, even if we consider plaintiffs' alternative basis for affirmance, ORS 31.710(1) does not violate the remedy clause in this case because the statute provides a "substantial remedy" to Kevin, and the remedy clause does not apply to Mitzi's loss of consortium claim because "Oregon law does not recognize a 'property' right to non-pecuniary services, society, and companionship from a spouse."
WAIVER
We begin with the threshold question of whether we are precluded from considering *341 plaintiffs' alternative basis for affirmance because they raise it for the first time on remand. Weyerhaeuser asserts that general waiver principles or the "law of the case" doctrine preclude our consideration of plaintiffs' remedy clause argument because plaintiffs failed to raise it as an alternative basis for affirmance in their initial briefing on appeal. Before we address the substance of Weyerhaeuser's arguments, we briefly revisit how the parties litigated the noneconomic damages cap below and on appeal. *680 After the jury returned a verdict in favor of plaintiffs, Weyerhaeuser moved to reduce the noneconomic damages awarded to plaintiffs to $500,000 based on ORS 31.710(1). Initially, plaintiffs opposed that motion, arguing solely that capping their noneconomic damages would violate Article I, section 17. Later, however, they filed an additional opposition brief that raised the remedy clause in Article I, section 10, and the reexamination clause in Article VII (Amended), section 3, as constitutional impediments to applying the cap. As to the remedy clause, plaintiffs asserted that, under Smothers , a statute could not deny a party a remedy that existed in 1857, and any statute that failed to provide a plaintiff with an adequate substitute remedy violated the constitution. Plaintiffs noted that all three of the constitutional provisions that they had cited in opposition to Weyerhaeuser's motion required an analysis of the historical origins of their causes of action. In plaintiffs' view, the common law recognized causes of action for products liability and loss of consortium, so all three constitutional provisions prohibited application of ORS 31.710(1). The trial court never reached plaintiffs' remedy clause arguments because it denied Weyerhaeuser's motion on the basis of Article I, section 17. After the limited judgment was entered, Weyerhaeuser appealed, assigning error to the trial court's ruling. On appeal, the parties argued about the historical origins of plaintiffs' claims, albeit in the context of Article I, section 17. Plaintiffs did not renew their remedy clause arguments as an alternative basis for affirmance.
With that background in mind, we turn to Weyerhaeuser's argument that the law of the case doctrine precludes our consideration of plaintiffs' remedy clause challenge, and conclude that the doctrine does not apply in this circumstance. The law of the case doctrine establishes that
" 'when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.' "
*681 Kennedy v. Wheeler , 356 Or. 518, 524, 341 P.3d 728 (2014) (quoting State v. Pratt , 316 Or. 561, 569, 853 P.2d 827 (1993) ). Here, no appellate court has made a binding "ruling or decision" on whether the remedy clause precludes application of ORS 31.710(1) in this case. As noted, the trial court decided the statutory cap issue on the basis of Article I, section 17, and neither we nor the Supreme Court addressed whether the application of ORS 31.710(1) in this case would violate the remedy clause. Furthermore, plaintiffs are advancing their remedy clause argument on remand, not in a "subsequent appeal." For those reasons, the law of the case doctrine does not apply.
Weyerhaeuser's argument based on the "waiver rule" is equally unavailing. Weyerhaeuser maintains that plaintiffs waived their remedy clause argument because they failed to raise it as an alternative basis for affirmance in their original briefing on appeal. Weyerhaeuser relies on several federal circuit court cases as establishing a "waiver rule" that bars litigation of issues that a party could have raised in an earlier appeal in the case. See, e.g. , Medical Center Pharmacy v. Holder , 634 F.3d 830, 834 (5th Cir. 2011) (holding that an issue that could have been but was not raised on appeal "is forfeited and may not be revisited by the district court on remand"). Those cases note that the "waiver doctrine," like the law of the case doctrine, " 'serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals.' " Id. (quoting *342 United States v. Castillo , 179 F.3d 321, 326 (5th Cir. 1999) ). Weyerhaeuser also relies on an Oregon Supreme Court case, Kentner v. Gulf Ins. Co , 298 Or. 69, 73-74, 689 P.2d 955 (1984), which is based on similar considerations. Kentner states "the general rule that a contention not raised on the original hearing will not be considered on a petition for rehearing." Id. In Kentner , the court explained that that rule was intended to (1) prevent a party from appealing in a piecemeal manner, (2) keep a party from shifting its position, and (3) promote the finality of appellate courts' decisions and promote judicial efficiency. Id. at 74, 689 P.2d 955. Accordingly, the purpose of the waiver rule recognized by the federal courts and our Supreme Court is, in large part, based on judicial efficiency concerns. *682 In short, those concerns are not present here.[5] In Vasquez , we recently considered a similar argument. 288 Or.App. at 509-10, 406 P.3d 225. In that case, we exercised our discretion to consider "right for the wrong reason" arguments raised for the first time on reconsideration. We noted that it was appropriate to consider an argument made for the first time on reconsideration when the reasons for the waiver rule are not implicated. Id. at 510, 406 P.3d 225. We noted that the plaintiffs were not seeking a piecemeal appeal, had not shifted positions on reconsideration, and had raised arguments that were consistent with judicial efficiency. Id. Thus, Vasquez was a "unique case" in which we considered right for the wrong reason arguments made for the first time on reconsideration.
Similarly here, the reasons for the waiver rule identified in Kentner and the federal cases cited by Weyerhaeuser are not in play. It is significant that, in the interim between plaintiffs' initial briefing as respondents on appeal and their supplemental briefing on remand, Horton significantly altered the legal analysis required to determine the constitutionality of statutory damages caps. As we have noted, at the time of Weyerhaeuser's appeal, arguments related to Article I, section 17, and Article I, section 10, both required an analysis of the historical origins of the claims at issue. Accordingly, even if plaintiffs had asserted the remedy clause as an alternative basis to affirm the trial court's ruling, our analysis of that issue would have required us to look at the historical origins of plaintiffs' claims-just as we did in evaluating the parties' arguments under Article I, section 17. Further, it is worth noting that, because Smothers had held that the remedy clause provided no protection for injuries for which no cause of action had existed in 1857, plaintiffs did not have an incentive to raise the remedy clause as an alternative basis for affirmance because, in essence, if their argument failed under Article I, section 17, it was likely to fail under Article I, section 10. Accordingly, we do not consider plaintiffs' attempts to defend the trial court's ruling based on the changed legal landscape as "seeking a piecemeal appeal" nor is their alternative basis for affirmance a *683 "shift in position" that undermines judicial efficiency. Here, the unique circumstances of the litigation and the significant change of law in between the initial appeal and remand convinces us that consideration of plaintiffs' remedy clause argument is consistent with judicial efficiency and does not run afoul of the waiver rule.
Because Weyerhaeuser's waiver and law of the case arguments fail, we next consider plaintiffs' remedy clause arguments as an alternative basis to affirm. See State v. Lovaina-Burmudez , 257 Or.App. 1, 14, 303 P.3d 988, rev. den. , 354 Or. 148, 311 P.3d 525 (2013) (regarding circumstances in which we will address an alternative basis to affirm that was raised below but not decided by the trial court). Weyerhaeuser does not dispute that it is appropriate to consider that alternative basis to affirm, and we conclude that it is.
REMEDY CLAUSE
Before we evaluate whether the remedy clause of Article I, section 10, prohibits application of ORS 31.710(1) to plaintiffs' noneconomic damages awards, we must decide a *343 threshold issue raised by Weyerhaeuser with respect to Mitzi's loss of consortium claim. The remedy clause provides, in part, that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation ." Or. Const., Art. I, § 10 (emphasis added). Weyerhaeuser asserts that Mitzi's claim is not protected by that clause because a loss of consortium claim does not involve an injury to her "person, property, or reputation." In arguing that point, Weyerhaeuser classifies Mitzi's claim as a claim for a "property right" to nonpecuniary "services, society, and companionship." In Weyerhaeuser's view, the Supreme Court concluded in Juarez v. Windsor Rock Products, Inc. , 341 Or. 160, 144 P.3d 211 (2006), that there is no "property right" for such a claim and thus there is no "injury to property" for purposes of the remedy clause. In other words, Weyerhaeuser argues that the remedy clause does not apply to Mitzi's loss of consortium claim because her "property right" claim is not a claim for injury to property covered by the remedy clause.
AOI expands on Weyerhaeuser's argument, contending that a contemporary claim for spousal loss of consortium *684 seeks compensation for injury to a "relational interest" not a property interest. AOI argues that Juarez classified aspects of the plaintiffs' claims as "relational interests" that are "not a loss of any property interest for which Article I, section 10, guarantees a remedy." Accordingly, AOI concludes that the only damages to Mitzi that are limited by ORS 31.710(1) compensate for the loss of aspects of her relationship with Kevin and, because those "relational interests" are not "property interests," they are not protected by the remedy clause.
Mitzi counters that Juarez is not controlling because it was narrowly decided on the basis of different claims, arguments, and injuries. She also asserts that Weyerhaeuser mischaracterizes the nature of her claim. At the outset, she acknowledges that, historically, a loss of consortium claim was based on the idea that the husband had a "property right" to the domestic services of his wife, which included emotional losses such as love, affection, companionship, and sexual relations. However, she contends that her spousal loss of consortium claim seeks recovery for "emotional harms" that are regarded as an injury to the person under the contemporary understanding of such claims.
We begin with Juarez . The plaintiffs in that case were the mother and adult children of a man, Juarez, who had died in an accident at work. 341 Or. at 163, 144 P.3d 211. They filed an action against Juarez's employer alleging that they had "suffered a loss of society, companionship, guidance, emotional support, services, and financial assistance" due to the negligently inflicted wrongful death of Juarez. Id. The trial court dismissed the plaintiffs' claims, concluding that Oregon's workers' compensation statutes limited recovery to a "burial benefit" provided to Juarez's estate. Id. at 164, 144 P.3d 211. On appeal, the plaintiffs argued that the statute in question, ORS 656.018(1)(a), violated the remedy clause of Article I, section 10, because it deprived them of "recovery on their common-law negligent wrongful death claim." Id.
Applying the methodology from Smothers , the court first examined whether the plaintiffs had alleged an injury to one of the rights protected by Article I, section 10. The court noted that the plaintiffs' complaint alleged "economic *685 injury in terms of a loss of 'services and financial assistance.' " Id. at 165, 144 P.3d 211. Next, the court observed that, although the plaintiffs were asking the court to overrule its prior cases that had rejected a common-law wrongful death cause of action, the court did not need to decide that issue because the plaintiffs had not "alleged that they have suffered an injury to 'person, property, or reputation.' " Id. at 168-69, 144 P.3d 211.
The court stated that "[i]t is clear that plaintiffs have not alleged an injury to their persons or reputations." Id. at 169, 144 P.3d 211. Relying on William Blackstone, 3 Commentaries on the Laws of England 119 (1768), the court noted that Blackstone had described injuries that "affect the personal security of individuals as either injuries against their lives, their limbs, their bodies, or their reputations." (Internal quotations omitted.) Without saying more, the court *344 concluded that, "Here, plaintiffs do not claim injury to their own lives, limbs, bodies, or reputations." Id.
The court then moved on to an issue that it determined "requires more discussion"-i.e. , "[w]hether plaintiffs allege an injury to property." Id. The court engaged in a lengthy examination of the meaning of "property" in the remedy clause, concluding that it "encompassed both legal and possessory interests, as well as money, goods, and 'things thereunto incident.' " Id. at 170, 144 P.3d 211. The court noted that, to the extent some courts had recognized the existence of a wrongful death cause of action at common law rooted in property rights, those cases involved claims for recovery of the loss of services of minor children. That is, a parent could recover at common law for the loss of services of a minor child "because the common law considered the services of a minor child to be a property right of the parent, but not vice versa." Id. at 172, 144 P.3d 211.
Against that backdrop, the court evaluated the plaintiffs' allegations, concluding that the plaintiffs
"do not allege that they possess any property right that defendant's conduct has infringed. For example, plaintiffs do not allege that they were dependent on decedent for his services or financial assistance, that decedent had any legal obligation to provide such support, or that they had any other legal interest in his income. Neither do plaintiffs *686 allege that they were legally entitled to decedent's services or the value of his services. Instead, plaintiffs allege the loss of aspects of their relationship with decedent. We do not doubt the importance of that loss to plaintiffs, but it is not a loss of any property interest for which Article I, section 10, guarantees a remedy."
Id. at 173, 144 P.3d 211.
We make several observations about Juarez . First, Juarez purported to apply the methodology set out in Smothers , and Horton explicitly overruled Smothers.
Second, Juarez involved significantly different circumstances than the instant case. For example, the claims in that case were brought by the parent and adult children of the decedent, whereas here, the claim at issue seeks spousal loss of consortium. Moreover, Juarez involved arguments about the validity of a "common-law" wrongful death action, the overlay of the workers' compensation exclusive remedy provision, and was reviewed by the Supreme Court based solely on the allegations in the complaint because it involved a dismissal under ORCP 21 A.
Third, it appears that the court's brief discussion of whether the plaintiffs had alleged an injury to their "own lives, limbs, bodies, or reputations" was limited to the narrow facts of that case. That is to say, given the context of the discussion, we do not understand Juarez to stand for the broad proposition that any claim for "loss of society, companionship, guidance, and emotional support" necessarily does not allege an "injury to person." Rather, the court took the limited view, without explanation, that the adult children and parent of the decedent in that case had not alleged an injury to their "bodies." In fact, the court emphasized the limited nature of its holding, emphasizing that, "[w]e must decide whether these plaintiffs have alleged a claim that the remedy clause * * * protects." Id. at 163, 144 P.3d 211 (emphasis in original). The court also "note[d] the limited nature of our holding in this case. We conclude only that these plaintiffs did not allege an injury to person, property, or reputation." Id. at 174, 144 P.3d 211 n. 7 (emphasis in original).
Fourth, we are of the view that the court's discussion of the plaintiffs' failure to allege an injury to "property"
*687 focused on the aspects of the plaintiffs' allegations that related to the "loss of services and financial assistance"-i.e. , economic damages. It appears important to the court's ultimate conclusion that the plaintiffs' complaint fell short of alleging "that they possess any property right that defendant's conduct has infringed" such as a "legal interest" in the decedent's income, his services, or financial assistance. Id. at 173, 144 P.3d 211. Accordingly, we understand the discussion of "property rights" in Juarez to focus on the plaintiffs' specific allegations of economic injury ("loss of services and financial assistance") and to *345 have concluded that those allegations, and only those allegations, failed to allege a "property right." Left out of that discussion were the plaintiffs' allegations that sought redress of noneconomic harms, such as loss of society or companionship. For those reasons, we do not believe that Juarez requires the conclusion that Mitzi's loss of consortium claim seeks redress for injuries that are not protected by the remedy clause.
To the contrary, we agree with Mitzi that, whatever the historical origins of a loss of consortium claim, in modern parlance Mitzi's claim alleges an injury to person that is protected by the remedy clause. Without going into great detail about the historical development of spousal loss of consortium claims, we note that, beginning in the mid-twentieth century, courts began to recognize that the nature of loss of consortium had changed from being primarily an economic injury to being primarily an emotional injury. Jo-Anne M. Baio, Loss of Consortium: A Derivative Injury Giving Rise to a Separate Cause of Action , 50 Fordham L. Rev. 1344, 1348, 1348 n. 25 (1982) ; see also Dan B. Dobbs, The Law of Torts § 310 (2000) (recognizing loss of consortium as a "species of emotional harm"). And, although no existing Oregon case explicitly addresses whether a spousal loss of consortium claim is a type of "injury to person," it is analogous to other tort cases that have recognized emotional harm as an injury to person. For example, the Supreme Court recently held that plaintiffs who witnessed the death of a family member, but were not themselves physically injured, could pursue a claim for negligently caused emotional distress. Philibert v. Kluser , 360 Or. 698, 385 P.3d 1038 (2016). Although a loss of consortium claim seek redress for loss of sexual relations, *688 emotional support, attention and companionship of the injured spouse, which are different in many ways from the shock or fright of losing a family member, both injuries involve a loss of emotional wellbeing. And, both injuries "are real and of the same essential quality, although the general emotional distress claim may be generated by an immediate shock, while the consortium claim may be generated by a long-term awareness of loss." Dobbs, The Law of Torts § 310 at 841-42. In short, we conclude that, given the nature of a loss of consortium claim and the nature of other claims that are considered bodily injuries, it would be incongruous to conclude that the type of injury suffered by Mitzi is not an "injury to person" that is protected by the remedy clause.
Finally, we consider plaintiffs' argument that reducing their noneconomic damages awards under ORS 31.710(1) is unconstitutional under the remedy clause. We begin with a brief overview of Horton , as well as our recent decision in Vasquez , which applied Horton to ORS 31.710(1).
In Horton , the court identified three general categories of legislation that it had considered in determining the limits that the remedy clause places on the legislature:
"(1) legislation that did not alter the common-law duty but denies or limits the remedy a person injured as a result of that breach of duty may recover; (2) legislation that sought to adjust a person's rights and remedies as part of a larger statutory scheme that extends benefits to some while limiting benefits to others (a quid pro quo ); (3) legislation that modified common-law duties or eliminated a common-law cause of action when the premises underlying those duties and causes of action have changed."
Schutz , 288 Or.App. at 486, 406 P.3d 66 (describing Horton ). In Horton , the court examined its case law regarding those categories and set out some guiding principles for evaluating whether legislative action violated the remedy clause. As noted, the court did away with the idea that the state of the common law in 1857 had anything to do with the constitutionality of legislation challenged under the remedy clause.
At this point, we turn to our recent decision in Vasquez because it guides our analysis in this case and answers some of the arguments advanced by the parties. In *689 Vasquez , we concluded that ORS 31.710(1) falls within the first category of cases identified by the Supreme Court in Horton . 288 Or.App. at 521, 406 P.3d 225. That is, the noneconomic damages cap in ORS 31.710(1) does not alter a common-law duty, but it *346 limits the remedy that a person injured as a result of a breach of that duty may recover. Second, we rejected the argument that ORS 31.710(1) is facially unconstitutional under Article I, section 10. Id . at 522, 406 P.3d 225. We concluded that, at least as to ORS 31.710(1), "[w]hether a remedy is 'substantial' is a question that we can answer only on a case-by-case basis, because a capped remedy could provide complete relief for many claimants." Id. Third, we rejected the defendant's argument (also made by Weyerhaeuser in this case) that the Supreme Court's decision in Greist v. Phillips , 322 Or. 281, 906 P.2d 789 (1995), dictates the conclusion that an award of all of a plaintiff's economic damages plus $500,000 in noneconomic damages is substantial under Article I, section 10. Id. at 523-24, 406 P.3d 225. We noted that cases like Griest , which involved wrongful-death claims, as well as cases that involved the damages caps in the Oregon Tort Claims Act (OTCA), did not control whether ORS 31.710(1) provides a substantial remedy because those cases involved different statutory schemes and different considerations under the principles outlined in Horton . Id.
With that background in mind, we turn to plaintiffs' "as applied" challenge to ORS 31.710(1), which requires us to answer whether the statutorily substituted remedy of $500,000 is "substantial" as required by Article I, section 10.
In Horton , the Supreme Court stated that "[w]hen the legislature does not limit the duty that a defendant owes a plaintiff but does limit the size or nature of the remedy, the legislative remedy need not restore all the damages that the plaintiff sustained to pass constitutional muster, *** but a remedy that is only a paltry fraction of the damages that the plaintiff sustained will unlikely be sufficient." 359 Or. at 220-21, 376 P.3d 998. The court also qualified that statement, noting that "other factors, such as the existence of a quid pro quo , can bear on the determination." Id. at 221, 376 P.3d 998. The court also directed courts to "consider the extent to which the legislature has departed from the common-law model measured against its reasons for doing so." Id. at 220, 376 P.3d 998.
*690 Vasquez is instructive to our inquiry. In Vasquez , the plaintiff was grievously injured when a bale-cutting machine "essentially cut plaintiff in half at the base of his spine, leaving him permanently paraplegic." 288 Or.App. at 525, 406 P.3d 225. The jury awarded him $2,231,817 in economic damages and $8,100,000 in noneconomic damages, but found the plaintiff 40 percent at fault for his injuries. Accordingly, the plaintiff's award was reduced to a total of $6,199,090, including $4,860,000 in noneconomic damages. If the cap in ORS 31.710(1) were applied, the plaintiff would have received $1,839,090 out of the $6,199,090 he would have received without the cap, which included $500,000 of $4,860,000 in noneconomic damages. Id.
In analyzing whether application of the cap left the plaintiff with a substantial remedy under Article I, section 10, we noted that under the common-law model, the plaintiff would have been entitled to recover his noneconomic damages, not subject to any cap. Id. at 524-25, 406 P.3d 225. Further, we observed that the
"legislature has departed fairly dramatically from that model by placing a hard cap on the amount of noneconomic damages a plaintiff may recover-a cap that was placed in 1987 and has not since been revisited-with no mechanism for adjustment for the changing value of money or for adjustment based on the relative severity of the injuries sustained by a plaintiff."
Id . at 525, 406 P.3d 225. We noted that the legislature enacted the hard money cap to " 'put a lid on litigation costs, which in turn would help control rising insurance premium costs for Oregonians.' " Id. (quoting Greist , 322 Or. at 299 n. 10, 906 P.2d 789 ). We concluded "that the legislature's reason for enacting the noneconomic damages cap-which was not concerned with injured claimants-cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs." Id.
Considering that the plaintiff had been grievously injured, and that he would receive $1,839,090 out of the $6,199,090 in total damages, and $500,000 out of $4,860,000 in noneconomic damages, we concluded that "
*347 ORS 31.710(1) would leave plaintiff with a remedy that is only a 'paltry *691 fraction' of the damages that he sustained and would otherwise recover." Id. at 525-26, 406 P.3d 225. We explicitly declined to take the defendant's suggested approach-"comparing and contrasting various percentages of recovery from other cases that the Supreme Court has determined involved a substantial remedy." Id. at 526, 406 P.3d 225. Instead, we concluded that "we are left with a bare reduction in plaintiff's noneconomic damages without any identifiable statutory quid pro quo or constitutional principle that the cap takes into consideration." Id. Accordingly, we concluded that applying ORS 31.710(1) to the jury award would violate Article I, section 10.
We take the same approach here. Consistently with Vasquez , we conclude that, given the nature of plaintiffs' injuries, the lack of any quid pro quo in ORS 31.710(1), and our conclusion that "the legislature's reason for enacting the noneconomic damages cap *** cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs," reducing plaintiffs' noneconomic damages awards to $500,000 would leave them without a "substantial" remedy as required by Article I, section 10. See Vasquez , 288 Or.App. at 525, 406 P.3d 225.
In this case, the cap in ORS 31.710(1) would leave Kevin, who is a paraplegic because of his injuries, with $500,000 of the $2,343,750 in noneconomic damages that the jury awarded him-representing a $1,843,750 reduction in his award. For the same reasons elucidated in Vasquez , application of ORS 31.710(1) to Kevin's damages award violates the remedy clause in Article I, section 10.
Further, with respect to Mitzi, reducing her award by $259,375 is a "bare reduction in [her] noneconomic damages without any identifiable statutory quid pro quo or constitutional principle that the cap takes into consideration." Vasquez , 288 Or.App. at 526, 406 P.3d 225. In this circumstance, we reject Weyerhaeuser's assertion that, because Mitzi would recover "more than 65 percent" of her noneconomic damages awarded by the jury, the substitute remedy of $500,000 is substantial. As Vasquez notes, cases in which the Supreme Court has determined that certain percentages of recovery equaled a substantial remedy involved considerations not present here, such as the historical limitations placed *692 on recovery in statutory wrongful death claims, or the quid pro quo at issue in cases involving the damages caps in the OTCA. Where none of those considerations (or any other applicable considerations) are at play, we do not see a principled reason to conclude that reducing Mitzi's noneconomic damages award by $259,375 in the circumstances of this case leaves her with a "substantial" remedy. Accordingly, we conclude that application of ORS 31.710(1) to her damages award violates the remedy clause in Article I, section 10.
Plaintiffs' limited judgment affirmed; Stayton Builders Mart's limited judgment reversed; general judgment reversed.

ORS 31.710(1) provides that, with exceptions not relevant here, the amount awarded for noneconomic damages "shall not exceed $500,000" in "any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium."

In the underlying litigation, the trial court also entered a limited judgment in favor of Stayton based on Stayton's third-party common-law indemnity claim against Weyerhaeuser. Subsequently, the court entered a general judgment against Weyerhaeuser awarding Stayton its defense costs of $265,458.70. Weyerhaeuser appealed both limited judgments and the general judgment. On appeal, we generally rejected Weyerhaeuser's assignments of error aimed at plaintiffs' limited judgment. However, for reasons noted later in this opinion, we reversed and remanded plaintiffs' limited judgment for the application of ORS 31.710(1) to Kevin's damages award. We also reversed Stayton's limited judgment based on its common-law indemnity claim. Finally, we reversed and remanded the general judgment with instructions to reduce the judgment by $1,512. On review, in addition to remanding the case to us to reconsider the application of ORS 31.710(1) to plaintiffs' damages awards, the Supreme Court concluded that ORS 20.220(3) required the general judgment to be reversed because we had reversed the underlying limited judgment for common-law indemnity. Rains v. Stayton Builders Mart, Inc. , 359 Or. 610, 642-43, 375 P.3d 490 (2016). As a result of that history, the only issue left for us on remand is whether ORS 31.710(1) can be applied to plaintiffs' noneconomic damages awards.

In particular, the Horton court concluded that Article I, section 17, "does not independently restrict the legislature's ability to impose a statutory damage cap on specific claims." Rains , 359 Or. at 639, 375 P.3d 490. Instead, Article I, section 17, "guarantees litigants a procedural right to have a jury rather than a judge decide those common-law claims and defenses that customarily were tried to a jury when Oregon adopted its constitution in 1857, as well as those claims and defenses that are 'of like nature.' " Horton , 359 Or. at 250, 376 P.3d 998.

Article I, section 10, provides:
"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Because the purposes behind the federally recognized waiver rule are not present here, we need not decide what, if any, force the waiver rule adopted by the federal courts has in Oregon's state courts.