ORTEGA, P.J.
*236 *821 In this personal injury case, plaintiff asserts that the trial court violated the remedy clause in Article I, section 10, of the Oregon Constitution, when it reduced his noneconomic damages award to $500,000 under ORS 31.710(1). Consistently with our decisions in Vasquez v. Double Press Mfg., Inc. , 288 Or. App. 503, 406 P.3d 225 (2017), rev. allowed , 362 Or. 665, 415 P.3d 580 (2018), and Rains v. Stayton Builders Mart, Inc. , 289 Or. App. 672, 410 P.3d 336 (2018), we conclude that the application of ORS 31.710(1) to plaintiff's jury award is unconstitutional. Accordingly, we reverse and remand.
The relevant facts are undisputed. Plaintiff suffered severe injuries, including the traumatic amputation of his leg above the knee, when he was struck by defendant's garbage truck as he crossed a street in downtown Portland. Defendant admitted liability, and the case eventually proceeded to trial on the issue of damages. The jury found that plaintiff was entitled to $3,021,922 in economic damages and $10,500,000 in noneconomic damages. After trial, defendant moved to reduce plaintiff's noneconomic damages to $500,000 under ORS 31.710(1). The parties disputed whether, under Horton v. OHSU , 359 Or. 168, 376 P.3d 998 (2016), such a reduction would violate the remedy clause. The trial court granted the motion, reduced plaintiff's noneconomic damages to $500,000, and entered judgment accordingly. Plaintiff challenges that ruling on appeal.
In Horton , the Supreme Court "reexamined at length whether the remedy clause * * * provides a substantive guarantee of a remedy in certain cases." Rains , 289 Or. App. at 677, 410 P.3d 336. The court answered that question affirmatively, concluding that the remedy clause "limits the legislature's substantive authority to alter or adjust a person's remedy for injuries to person, property, and reputation." Horton , 359 Or. at 173, 376 P.3d 998. In doing so, the court overruled Smothers v. Gresham Transfer, Inc. , 332 Or. 83, 23 P.3d 333 (2001), and reinvigorated pre- Smothers cases that had applied Article I, section 10. Horton , 359 Or. at 188, 197, 376 P.3d 998. The court also identified three general categories of legislation that it had previously *822 considered in determining the limits that the remedy clause places on the legislature:
"(1) legislation that did not alter the common-law duty but denies or limits the remedy a person injured as a result of that breach of duty may recover; (2) legislation that sought to adjust a person's rights and remedies as part of a larger statutory scheme that extends benefits to some while limiting benefits to others (a quid pro quo); (3) legislation that modified common-law duties or eliminated a common-law cause of action when the premises underlying those duties and causes of action have changed."
Schutz v. La Costita III, Inc. , 288 Or. App. 476, 486, 406 P.3d 66 (2017), rev. allowed , 362 Or. 794, 416 P.3d 1096 (2018).
The Horton court then addressed liability limits in the Oregon Tort Claims Act (OTCA). The court determined that those limits were "part of a comprehensive statutory scheme intended to extend benefits to some persons while adjusting the benefits to others." 359 Or. at 221, 376 P.3d 998. That is, the limits fell within the second category of legislation identified by the court. Ultimately, the court concluded that the liability limits in the OTCA were constitutional based "on the presence of the state's constitutionally recognized interest in sovereign immunity, the quid pro quo that the [OTCA] provides, and the tort claims limits in this case." Id. at 225, 376 P.3d 998. The court explicitly declined to express an opinion on whether damages caps that did not involve the state's interest in sovereign immunity and were not part of a similar quid pro quo would comply with Article I, section 10. Id .
We addressed that undecided issue, at least as to ORS 31.710(1), in Vasquez . In that case, we explained that ORS 31.710(1) fell within the first category of legislation identified in Horton -i.e. , the statute limits a remedy for a recognized duty, and does not deny a remedy completely. 288 Or. App. at 521, 406 P.3d 225. We noted that, according to Horton , such legislation violates the remedy *237 clause if the remedy provided is not "substantial." Id. at 522, 406 P.3d 225 (citing Horton , 359 Or. at 219, 376 P.3d 998 ). Initially, we rejected the argument advanced by the defendant that Greist v. Phillips , 322 Or. 281, 906 P.2d 789 (1995), *823 held that an award of all of a plaintiff's economic damages plus $500,000 in noneconomic damages is, as a matter of law, "substantial" under Article I, section 10. Vasquez , 288 Or. App. at 523-24, 406 P.3d 225. We determined that the court's holding in Greist was limited to wrongful-death claims. Id. We also concluded that cases involving the OTCA damages cap did not control whether ORS 31.710(1) provides a substantial remedy, noting that those cases involved different statutory schemes and different considerations than those present in ORS 31.710(1). Id . at 524, 406 P.3d 225.
We then applied principles identified by the court in Horton to determine whether the remedy provided to the plaintiff in Vasquez under ORS 31.710(1) was "substantial." Noting that Horton directed courts to " 'consider the extent to which the legislature has departed from the common-law model measured against its reasons for doing so[,]' " Vasquez , 288 Or. App. at 524, 406 P.3d 225 (quoting Horton , 359 Or. at 220, 376 P.3d 998 ), we observed that placing a hard cap on noneconomic damages-as the legislature had done in ORS 31.710(1) -"departed fairly dramatically" from the common-law model where a plaintiff was entitled to recover all noneconomic damages. Id. at 524-25, 406 P.3d 225. We also observed that the statutory scheme did not provide a quid pro quo and that the legislative purpose for the dramatic departure from the common-law model was to " 'put a lid on litigation costs, which in turn would help control rising insurance premium costs for Oregonians.' " Id. at 525, 406 P.3d 225 (quoting Greist , 322 Or. at 299 n. 10, 906 P.2d 789 ).
Ultimately, we concluded that "the legislature's reason for enacting the noneconomic damages cap-which was not concerned with injured claimants-cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs." Id. After observing the grievous injuries suffered by the plaintiff (the plaintiff was "essentially cut *** in half at the base of his spine"), we noted that ORS 31.710(1) would have reduced the plaintiff's noneconomic damages from $4,860,000 to $500,000, and reduced the plaintiff's overall award from $6,199,090 to $1,839,090. Id. We stated that, *824 "we are left with a bare reduction in plaintiff's noneconomic damages without any identifiable statutory quid pro quo or constitutional principle that the cap takes into consideration. Under those circumstances, the application of ORS 31.710(1) to plaintiff's jury award violates the remedy clause in Article I, section 10."[1] Id. at 526, 406 P.3d 225.
Relying on Vasquez , we reached the same conclusion in Rains. In that case, Kevin Rains had also been grievously injured-suffering severe injuries that resulted in paraplegia-and his wife, Mitzi, had suffered noneconomic damages for loss of consortium. Rains , 289 Or. App. at 675, 410 P.3d 336. Noting that application of the cap would have reduced the plaintiffs' noneconomic damages to $500,000 each from $2,343,750 and $759,375, we concluded that,
"given the nature of plaintiff's injuries, the lack of any quid pro quo in ORS 31.710(1), and our conclusion [in Vasquez ] that 'the legislature's reason for enacting the noneconomic damages cap *** cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs,' reducing plaintiffs' noneconomic damages awards to $500,000 would leave them without a 'substantial' remedy as required by Article I, section 10."
Id. at 691, 410 P.3d 336 (quoting Vasquez , 288 Or. App. at 525, 406 P.3d 225 ).
This case is indistinguishable from Vasquez and Rains . Here, we again have a grievously injured plaintiff and a "bare reduction in noneconomic damages without any identifiable quid pro quo or constitutional principle that the cap takes into consideration."
*238 Application of the cap would reduce plaintiff's noneconomic damages award from $10,500,000 to $500,000 and his overall award from $13,521,922 to $3,521,922. In the circumstances of this case, consistently with Vasquez and Rains , we conclude that application of ORS 31.710(1) to plaintiff's damages award violated the remedy clause, and the trial court should, on *825 remand, enter a judgment consistent with the jury's damages award.[2]
Reversed and remanded.

We rejected the plaintiff's assertion that ORS 31.710(1) facially violated Article I, section 10, noting that a capped remedy "could provide complete relief for many claimants." Vasquez , 288 Or. App. at 522, 406 P.3d 225.

To the extent that defendant suggests that we were wrong to conclude that the legislature was not concerned with injured claimants when it enacted the cap in ORS 31.710(1), we decline to revisit that conclusion.
We also reject defendant's argument that our conclusions in Vasquez and Rains are faulty because we "did not address whether the symbolic purpose and the variable, unpredictable, subjective, and unquantifiable nature of noneconomic damages makes limits on them less susceptible to a remedy-clause challenge than limits on economic damages." Although it is true that we did not explicitly address that assertion, we see nothing in Horton or the pre-Smothers case law that supports the conclusion that $500,000 in noneconomic damages is substantial because an award of noneconomic damages in any amount serves the symbolic purpose of such damages. We reject that assertion. Instead, we adhere to our conclusion in Vasquez and Rains that the legislature's reason for enacting the noneconomic damages cap-which was not concerned with injured claimants-cannot bear the weight of the dramatic reduction in noneconomic damages that the statute required for the most grievously injured plaintiffs.
Finally, we reject defendant's argument that the appropriate disposition in this case is for us to "apply the cap to the extent the remedy clause permits or, in the alternative, to remand with instructions for the trial court to do so." "[W]hen the facts of a particular case demonstrate that the application of the statute to those unique facts would be unconstitutional, it is the obligation of this court to enforce the constitutional provision-our fundamental law-rather than the statute." State v. Rodriguez/Buck , 347 Or. 46, 80, 217 P.3d 659 (2009). We are unpersuaded by defendant's arguments that we are authorized to determine an amount of noneconomic damages that would not violate the remedy clause in this case.